JOSEPH ARCHIBALD CARLE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 16, 1902—Rehearing denied February 6, 1903.*

1. CRIMINAL LAW—*when instruction may require jury to find accused guilty of murder.* It is not error to give an instruction reciting every essential fact constituting the crime of murder, and authorizing the jury to find the accused guilty thereof if they believe the facts so recited have been proved beyond a reasonable doubt, since, if all the facts constituting the crime of murder have been so proved, the law does not authorize a conviction for a less offense. (*Steiner* v. *People*, 187 Ill. 244, distinguished.)

2. SAME—*State is not bound to introduce all witnesses whose names are endorsed on indictment.* If the State's attorney doubts the veracity or integrity of a witness whose name is endorsed upon the indictment and who claims to have been an eye-witness of the crime, he is not obliged to call him; but the court may call the witness and leave him open for cross-examination by either side.

3. SAME—*when witness is not discredited in advance by State's attorney.* If the State's attorney is required by the court to announce his reason for not calling a witness whose name is on the indictment, and he answers that the State will not vouch for his testimony nor guarantee its truth, such statement is not improper as discrediting the witness with the jury when called by the court.

4. SAME—*when evidence of vicious character of deceased is not admissible.* Evidence of the vicious character of the deceased and that he was accustomed to go armed is not admissible in a murder trial, if, at the time such evidence is sought to be introduced, there is no evidence tending to show deceased was the assailant, the only evidence at that time being that the accused was the assailant.

5. SAME—*whether attempt to impeach accused is successful is a question for the jury.* Whether the attempt of the State to impeach the accused was successful is a question of fact for the jury, where the accused offers nothing to contradict the testimony of two witnesses for the State who swore that his reputation for truth and veracity in the neighborhood where he lived was bad.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is an indictment, found by the grand jury of Cook county against the plaintiff in error for the murder of one Hector McKenzie on October 10, 1899, in said county.

The cause was tried in January and February, 1900, in the criminal court of Cook county, and resulted in a verdict of murder with punishment of imprisonment in the penitentiary for twenty-five years. Motions for new trial and in arrest of judgment were overruled, and judgment was rendered and sentence pronounced in accordance with the verdict, on March 8, 1900. The present writ of error is sued out for the purpose of reviewing the judgment of conviction, so rendered by the criminal court of Cook county.

On the night of October 10, 1899, between 11:30 and 12 o'clock the plaintiff in error, Joseph Archibald Carle, shot and killed Hector McKenzie in a saloon, kept by one Timothy Kelly at 130 Lake street in Chicago on the north side of Lake street one door west from the north-west corner of Lake and Clark streets, there being a saloon, kept by one Ganey, on the north-west corner of Clark and Lake streets just east of Kelly's saloon. In Kelly's saloon, which fronted south, the bar was on the west side of the room. There was a screen about eight feet north of the front door running east and west, about four feet wide and seven feet high. South of the screen and on the west side of the room was a cigar show-case, and from the screen the bar ran north eighteen feet. The distance from the end of the bar to the north end of the room was twenty feet. On the north side of the bar on the west side of the room were three little rooms, two of them wine rooms, the other being used for coal. These wine rooms were about five feet deep, and in them were tables and chairs. There was but one entrance to the saloon, which was the front door leading from Lake street.

At about 11:30 o'clock of the evening of October 10, 1899, the deceased, McKenzie, with a companion, dressed in a blue blouse, and said to have been an engineer, came into the saloon, and walked to the north end of the bar, the engineer standing to the south of McKenzie. Kelly, the bar-keeper, was behind the bar in front of the two

men, drawing a glass of beer for them, and with his back towards them. At this time the plaintiff in error, Carle, came to the door of the saloon. While McKenzie was thus standing at the bar, and while the bar-keeper, with his back turned, was drawing the beer, Carle then and there drew a revolver, and shot McKenzie in the neck on the left side thereof about an inch below the ear. McKenzie fell to the floor, and died in a short time. As soon as he had fired the shot, Carle left the saloon and went rapidly east on Lake street. The testimony tends to show that Carle was at least ten feet from McKenzie when he fired the shot. At about 1:30 o'clock in the morning, Carle, the plaintiff in error, was arrested by the officers upon Lake street.

JOHN C. KING, and WM. J. KING, for plaintiff in error.

H. J. HAMLIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and HARRY OLSON, of counsel,) for the People.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is first claimed, on the part of the plaintiff in error, that he killed McKenzie in self-defense, and that the proof clearly shows the case to be one of self-defense. The testimony in reference to this matter was conflicting, and was left to the jury to determine under proper instructions from the court.

On the part of the State, the testimony on the trial below tended to show the following facts:

Plaintiff in error, although he had been at one time the keeper of a saloon on the west side in Chicago, was, at the time of this occurrence, engaged in running a tailor shop at 302 Thirty-first street in the south division of the city. The plaintiff in error came into Kelly's saloon on the evening of October 10, 1899, about eight o'clock, and inquired for a package of tailor's samples. He claimed

that these samples had been left at the saloon for him by a customer. Plaintiff in error, later in the evening, between ten and eleven o'clock, returned to the saloon with a woman named Mamie Morrissey, *alias* Mary Mollway, *alias* Mary Young. She had been in the saloon with the plaintiff in error before this time. When he and the woman came into the saloon, they went into one of the wine rooms, sat down at a table, and were engaged in drinking. While they were in the wine room, McKenzie came into the saloon laughing and humming a song. When he saw Carle in the wine room, he said "I can lick all the Carles in Chicago." The saloon-keeper, fearing that a difficulty was about to occur between Carle and McKenzie, ordered them out of the saloon. Carle left the saloon, and McKenzie was put out. In about half an hour McKenzie returned with the engineer already referred to, and then Carle came into the saloon, or to the door of the saloon, and shot him in the manner already stated. Kelly says that, when he turned around after drawing the beer, he saw Carle going out of the door with a smoking revolver in his hand. After the shooting the engineer, who was with McKenzie, left the saloon and crossed the street and disappeared, and, so far as this record shows, has never since been heard of. The officers of the law then came and closed the saloon and searched the body. No weapon was found upon McKenzie when his body was so searched. Nothing was found upon his body except a few matches, a comb, a lead-pencil, and a few pieces of paper. At the time the shooting occurred there were in the saloon, besides the saloon-keeper, Kelly, and the deceased and the engineer, a man named Charles Marshall, who was a bar-tender, and two women, named Ellen Mills and Tillie Martell, who were in one of the wine rooms. When the plaintiff in error visited the saloon the second time about half-past ten or eleven o'clock with the woman called Mary Morrissey, the latter left the saloon before Carle did, and he was

alone in the saloon when McKenzie came in laughing and humming a song. A trunk-maker, named Joseph McNamara, was on the corner of Lake and Clark streets waiting for a car, standing about ten or twelve feet from the saloon, which was lighted. McNamara says, that he saw a man enter the saloon, and heard a shot fired immediately; that the man came from the east; that, just as the shot was fired, the man came out again "so quick I couldn't hardly tell it." He also says, "It seemed he just no more than got in when the shot was fired, and out again." This man was the plaintiff in error. McNamara did not know either McKenzie or Carle, or any one connected with the saloon. He says that he went at once to the entrance of the saloon, and saw that McKenzie was shot; that the door was open, and he looked in, and saw the man just as he dropped down on the floor, and saw the bar-tender put a towel around his neck; that he then went to an officer, and told the officer, and that then they all rushed into the saloon; that there were two officers, standing on the north-west corner and waiting for a car.

On the part of the defense, testimony was introduced with a view of showing, and tending to show, that, prior to the shooting, there had been some difficulty between McKenzie and Carle, and that the former had threatened to shoot the latter. Mary Mollway, or Morrissey, who had kept rooms at 25 North State street, and from whom, at different times, both McKenzie and Carle had rented rooms, stated that, about the first of September, Carle had come to her house, and had there been attacked by McKenzie and another man, and thrown over the bannisters and injured. She also appears to have been in the company of McKenzie on the evening of October 10, and went over to the north side with him, before she met plaintiff in error and went into Kelly's saloon with the latter. The testimony of Mary Mollway, and of Marshall, and of the plaintiff in error himself, tends to show that, at the second visit of Carle to the saloon that even-

ing, when the deceased said "I can lick all the Carles in Chicago," McKenzie was armed and advanced towards Carle with a revolver. This testimony, however, is contradicted by the testimony of the State. Mary Mollway did not witness what took place at this time, inasmuch as she left the saloon before Carle did, but she claims that she went up the steps of the elevated railroad in front of the saloon, and from there saw something of what took place in the saloon. She says that the revolver, which McKenzie had at that time, was taken from him, and handed to a man by the name of Egan. Egan, however, was placed upon the stand, and denied that any revolver was handed to him. Several witnesses were produced, who swore that the reputation of the plaintiff in error for truth and veracity was bad, and that they would not believe him upon oath; and one of these witnesses swears that plaintiff in error had at one time shot at him. One of the witnesses in behalf of the defense was shown to have been convicted and sentenced to the penitentiary in 1883. The parties, testifying in the case, were for the most part frequenters of the saloon in question, and some of them, both men and women, were criminal and abandoned characters. The jury heard their testimony, and it was for them to determine whether the witnesses for the State or the witnesses for the defense were worthy of belief. After plaintiff in error left the saloon when he visited it in company with the woman, Mary Mollway, he came back in half an hour, armed with a revolver, and entered the saloon, and shot the deceased, and killed him. Whether, as he claims and as his evidence tends to show, he went there merely for the purpose of getting a package of tailor's samples which had been left there, and because he had been informed that McKenzie had left the saloon, or whether he returned to the saloon for the express purpose of killing the deceased, was a matter to be decided by the jury from all the testimony and the circumstances, developed by

the evidence. It is not denied that the court gave to the jury clear and full instructions upon the subject of self-defense, and defining what constituted self-defense. Evidently they believed the witnesses of the State, tending to show that the killing was murder, and not in self-defense. The verdict is not so far contrary to the weight of the evidence, as to induce us to set it aside upon that ground.

*Second*—It is claimed, on the part of the plaintiff in error, that the court gave three instructions to the jury in behalf of the State upon the subject of reasonable doubt, which were erroneous. It is not necessary to set out these instructions in full in this opinion. They give the ordinary and common definitions of reasonable doubt, which have so often been passed upon by this court. After a careful examination of the instructions thus complained of, we are of the opinion that all the statements and definitions, contained in them upon the subject of reasonable doubt, are fully sustained by the following cases: *Miller* v. *People*, 39 Ill. 457; *May* v. *People*, 60 id. 119; *Connaghan* v. *People*, 88 id. 460; *Dunn* v. *People*, 109 id. 635; *Spies* v. *People*, 122 id. 1; *Collins* v. *People*, 194 id. 506.

It is also claimed by the plaintiff in error, that the following instruction, given by the trial court for the State, was erroneous, to-wit:

"You are further instructed that, if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Carle, with malice aforethought, either expressed or implied, inflicted upon the deceased, Hector McKenzie, the mortal wound or wounds in manner and form as charged in the indictment, not in self-defense as the same is defined in these instructions, and not upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, and that the said Hector McKenzie did thereafter die from said mortal wound or wounds in manner and form as charged in the indictment, then the jury should find the defendant Carle guilty of murder."

The objection, made to this instruction, is that, after pre-supposing the existence of certain facts, the instruction concludes as follows: "Then the jury should find the defendant Carle guilty of murder." It is said that this form of instruction has been condemned in the cases of *Steiner* v. *People*, 187 Ill. 244, *Panton* v. *People*, 114 id. 505, and *Lynn* v. *People*, 170 id. 527. The instruction here under consideration differs materially from those given in the cases referred to, and those cases are clearly distinguishable from the case at bar.

The instruction in the case at bar, unlike that in *Steiner's case*, contains this clause: "Not in self-defense as the same is defined in these instructions." This clause contains the element of apparent danger, which was wanting in the instruction in *Steiner's case*. In the latter case the instruction, before the conclusion thereof, did not contain every material element necessary to warrant the conclusion thereof. Here, instruction numbered 11, does contain all the elements of the crime of murder in the facts which it assumes to exist; and if those elements were established by the testimony, it was the duty of the jury to find the defendant guilty of murder. This being so, the concluding words were proper. It is not error to give an instruction, reciting every essential fact necessary to constitute the crime of murder, and authorizing the jury to find the accused guilty thereof, if they believe the facts recited therein to have been proved beyond a reasonable doubt, because, if all the facts constituting such crime, have been proved beyond a reasonable doubt, the law does not authorize a conviction for a less offense. The distinction between such an instruction as that in the case at bar, and such instructions as were under consideration in the three cases referred to by counsel, is pointed out in the recent case of *Crowell* v. *People*, 190 Ill. 508. In the latter case, this court, in speaking of *Steiner's case*, said (p. 518): "The instruction was condemned for

ignoring the doctrine of apparent danger in cases of self-defense, and the facts stated were for that reason not sufficient to constitute murder. For aught that was stated in that instruction it might have been apparently necessary to inflict the mortal wound in self-defense, and a direction to find the defendant guilty of murder or anything else upon such an hypothesis was erroneous. No authority has been cited where an instruction was condemned which was free from objection and applied to the facts of the particular case, and which contained every element necessary to constitute the particular crime." Here, the court not only instructed the jury "that, under an indictment for murder, they may find the defendant guilty of murder, or they may find the defendant guilty of manslaughter," but the court gave, both in behalf of the State and in behalf of the plaintiff in error, full and clear instructions defining self-defense, as referred to in the above quoted clause from instruction numbered 11.

For example, the court gave, on behalf of the plaintiff in error, instruction numbered 2, which is as follows:

"The court further instructs the jury that a person need not be in actual imminent peril of his life, or of great bodily harm, before he may slay his assailant; it is sufficient if, in good faith, he has a reasonable belief, from the facts as they appeared at the time, that he is in such imminent peril. The rule of law on the subject of self-defense is this: Where a man in the lawful pursuit of his business is attacked, and when, from the nature of the attack, there is reasonable ground to believe that there is a design to take his life or to do him great bodily harm, and the party attacked does so believe, then the killing of the assailant under such circumstances will be excusable or justifiable homicide, although it should afterwards appear that no injury was intended and no real danger existed."

Several other instructions to the same effect were given to the jury upon this subject. We are of the opin-

ion that the court committed no error in giving instruction numbered 11, here objected to.

*Third*—It is furthermore contended, on the part of the plaintiff in error, that the trial court erred in not compelling the State to call Charles S. Marshall, an eyewitness of the shooting, and whose name was endorsed upon the back of the indictment. The court committed no error in this respect. It has been held by this court that, under the practice in this State, the prosecution is not compelled to introduce all the witnesses, whose names are on the back of the indictment. (*Bressler* v. *People*, 117 Ill. 422).

It is claimed, however, that the court erred "in allowing the State's attorney to discredit him (Marshall) in advance with the jury." The charge, that the State's attorney discredited the witness, Marshall, is based upon the fact that the State's attorney, just before closing his case, announced to the court as follows: "If the court please, there is another witness, Charles Marshall, who, the evidence discloses, was in the saloon at the time, and whom the State does not want to call as a witness. He is here, and either side can call him, or the court can call him. I shall request the court to call him, so both sides can cross-examine him. He is a witness at the scene and I think ought to be called." The attorney for the defense then said: "I think it is the duty of the State to place upon the witness stand all witnesses present at the shooting, especially such as are placed upon the back of the indictment." The court then said: "Is there any reason why this course should be pursued?" The State's attorney replied: "Because the State will not vouch for his testimony—will not guarantee its truth." The court then stated that "the court will call him." Marshall then took the stand, and was examined by the court, and was cross-examined both by counsel for the plaintiff in error and by the State's attorney.

We are unable to say that there was anything improper in the remarks of the State's attorney upon this subject.   Where the State's attorney knows that a witness was present at the scene of the killing, but for some reason, either because he has no confidence in the witness, or for any other reason, he may doubt his veracity or integrity, he is not obliged to call such witness.   In such case the court may call the witness, and leave him open for cross-examination by either side.   The State's attorney is invested with a certain discretion in the matter of calling witnesses for the State.   Inasmuch as the court made it necessary for the State's attorney to announce the ground, upon which he exercised his discretion, the statement, that the People would not vouch for the testimony of the witness, or guarantee its truth, was not improper, and was not a challenge of the truth or veracity of the witness.

*Fourth*—The defense charges, that the trial court erred in excluding evidence that the deceased was a dangerous, vicious man, accustomed to go armed, and that the plaintiff in error had knowledge of this fact.

The rule upon this subject, as stated by Wharton in his work on Criminal Evidence (sec. 84), is as follows: "It is admissible for the defendant, after having first established that he was assailed by the deceased, and in apparent danger, to prove that the deceased was a person of ferocity, brutality, vindictiveness and excessive strength." In *Cannon* v. *People*, 141 Ill. 270, this court, in commenting upon the statement thus made by Wharton, said (p. 281): "When the defendant is the assailant or commences the affray, he will not be entitled to show in defense the vicious or wicked disposition of the person whom he has slain.   Having sought and brought on the affray, he cannot shield himself from punishment for the homicide by showing that he aroused the vicious or wicked passions of the party killed.   But when evidence is submitted from which the court can see that the jury

may, if they give it credence, find that the party killed
was the assailant, and that the defendant acted in self-
defense, such evidence becomes admissible, as tending
to show the circumstances, by which the defendant was
surrounded, and the extent of the apparent danger to his
life or person, and from which he might be justified in
believing that his life was in danger, or that he was in
danger of suffering great bodily harm at the hands of
the assailant, and illustrating to the jury the motive by
which he was influenced. It appears, however, that the
evidence was offered before the defendant testified, and
was rejected, and that it was not again offered after his
testimony. At the time it was offered there was no evi-
dence showing that the deceased was the assailant, and
the evidence was then properly excluded. If the defend-
ant desired the evidence to go to the jury, it should have
been offered after the introduction of the evidence tend-
ing to show the assault by the deceased."

At the time when counsel for plaintiff in error sought
to call out evidence of this character upon cross-exami-
nation of one or more of the witnesses of the State, no
evidence had been introduced that in any way tended to
show that the deceased, McKenzie, had made an attack
upon the plaintiff in error. On the contrary, it appeared
up to that time, that McKenzie was shot while he was
unarmed and standing at the bar of the saloon, and had
his back turned to the plaintiff in error. After plaintiff
in error had introduced testimony, tending to show that
the deceased had threatened to shoot the plaintiff in
error, and had drawn a revolver upon him, then it was
proper for the plaintiff in error to introduce evidence
showing that the deceased was a dangerous and vicious
man; and thereafter such evidence was introduced, and
was admitted. The trial court did not exclude proper
evidence, when offered at the proper time, that the de-
ceased was a dangerous and vicious man and accustomed
to go armed; nor was evidence of the defendant's knowl-

edge of this fact excluded. On the contrary, all the evidence, offered upon this subject at the proper time, was admitted by the court. If there was evidence to be had upon this subject which is not now in the record, it is because counsel for plaintiff in error failed to re-call the witnesses on this subject after the condition of the testimony made the evidence of such witnesses admissible.

*Fifth*—Several other objections are made by counsel for plaintiff in error to the action of the court below, one of which is that the court excluded the testimony of a witness, named Neil O'Brien, as to what was said by plaintiff in error to him and by him to plaintiff in error, in reference to going into Kelly's saloon to get the package already spoken of. Plaintiff in error sought to show that, after he had been twice in the saloon of Kelly that evening, and at about eleven o'clock, he met O'Brien near the saloon, and had a conversation with him in reference to going after the package. There was no error in excluding this testimony, as it was not competent. O'Brien was a witness called by the defense, and it was sought to show by him what Carle had said to him in the absence of the deceased, and while they were alone together, standing upon the street. To admit proof of this kind would have been to permit the plaintiff in error, Carle, to make evidence for himself by proving statements that he made to third persons, not in the presence of the deceased. Plaintiff in error was permitted to state, when he was on the stand, that he went to the saloon, as well when he visited it the third time as when he visited it the first time, in order to get the package already referred to. He thus succeeded in placing before the jury his own statement, that his object in going there was to get the package, and not to provoke a difficulty with the deceased, or to kill the latter.

It is also claimed by plaintiff in error that the court erred in permitting the State, upon the cross-examination of the woman, Mary Mollway, to ask her about her

separation from her husband, and about the fact of her living apart from her husband. An examination of her testimony upon this subject shows that she volunteered the answer, that she was living apart and separate from her husband, without being asked questions which were necessarily calculated to elicit such a reply. Her answers upon the subject were not strictly responsive to the questions, asked her upon the cross-examination, and were volunteered on her part.

It is insisted upon by plaintiff in error that the attempt to impeach the plaintiff in error was unsuccessful. Two witnesses testified that the reputation of plaintiff in error for truth and veracity in the neighborhood in which he lived, was bad, and that they would not believe him under oath; and no testimony was offered by the defense to contradict or offset this impeaching testimony, introduced by the State. Whether or not the effort to impeach plaintiff in error was successful, was a matter for the determination of the jury, and was entirely a question of fact.

It is also strenuously urged by the plaintiff in error that he was a reputable citizen working for his living as a tailor. Whatever evidence there was, showing that he was a reputable citizen, was presented to the jury, and was for their consideration. There was evidence, tending also to show that he was an associate of criminal characters, both men and women, and a frequenter at all hours of the night, of saloons where intoxicating liquors were sold. No ruling of the trial court is called to our attention upon the question, whether the plaintiff in error was a reputable character or a disreputable character, that requires any action on our part.

We discover no error, which would justify us in reversing the judgment of the criminal court of Cook county. Accordingly, that judgment is affirmed.

*Judgment affirmed.*