THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ADOLPH BASKIN, Plaintiff in Error.

*Opinion filed June 21, 1912.*

I. CRIMINAL LAW—*party may be convicted of receiving stolen property on testimony of the thieves.* The jury may convict the accused of the crime of receiving stolen property on the uncorroborated testimony of the thieves, even though the latter contradict each other as to certain details and although the accused and his foreman deny that they had any dealings with the thieves except to refuse to buy the goods.

2. SAME—*evidence as to other transactions before the one in question is admissible to show guilty knowledge.* In a prosecution for receiving stolen property, evidence of other transactions before the one in question is admissible in order to show guilty knowledge; but testimony concerning another transaction is properly stricken out, where the witness is unable to say whether it took place before or after the transaction in question.

3. SAME—*court may, upon proper showing, call a witness so that both sides may cross-examine him.* If the prosecution is unable to vouch for or guarantee the testimony of a person who was an eye-witness of the crime, the court may, on a proper showing, call the witness and examine him, in order that the prosecution, as well as the defense, may cross-examine him.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding.

JAMES T. BRADY, (EDWIN J. RABER, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and FRED H. HAND, (JEREMIAH SULLIVAN, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of receiving stolen property and sentenced to an indeterminate period in the penitentiary. Richard Mc-

Laughlin, jointly indicted with plaintiff in error, was found not guilty by the jury.

On April 22, 1911, the place of business of the Quinn Supply Company, dealers in plumbers' supplies in Chicago, was entered and a watch and chain, a ring, two revolvers, about $60 in money and a quantity of plumbers' supplies valued at several hundred dollars were taken. Frank Platt, who was at the time of this trial serving a term in the penitentiary for highway robbery, testified for the State that on Saturday night, April 22, 1911, he, with John Kaczor, assisted a part of the time by James Buckley, an expressman, went to the Quinn company's place of business and took this property, leaving a part of it at Buckley's place, on Wells street, in Chicago, and the plumbers' supplies at Baskin's junk yard, which they reached between six and seven the following morning; that one McLaughlin, an employee of Baskin in charge of the place, telephoned to his employer and that Baskin came shortly thereafter to the store; that after some conversation he asked Platt where he got the brass, and the latter told him the facts; that Baskin said he did not know whether or not, if he bought it, he could sell it, but after conferring with a man with spectacles, whom Platt did not know, said he would take it, weighed it and paid him $180, or ten cents a pound. According to Platt's story he made two trips to Quinn's store,—one with Kaczor alone, and the other with Kaczor and Buckley, with Buckley's wagon,—and the $180 was divided equally between himself, Kaczor and Buckley and the other property between himself and Kaczor. Buckley did not testify. Kaczor testified substantially the same as Platt as to the delivery and sale of the plumbers' supplies to Baskin, but stated that he only made one trip to Quinn's place of business that night,—that being with Platt and Buckley,—and that he (Kaczor) only received $3 from the sale of the brass. Baskin testified denying that he had purchased the plumbing supplies or any other junk from

Platt or Kaczor or that he was at his place of business at all on the Sunday morning in question. His testimony on the latter point was corroborated by a witness who lived in the same flat-building and testified that she saw him at his home that morning. He stated that his employee, Mc-Laughlin, on May 5, 1911, telephoned him that some men wanted to sell a load of brass and asked if he should let them leave it, and that he replied that he did not want to buy from people he did not know and to send them away; that he afterwards learned from one Mansfield, who dealt in junk, that on May 5 he had bought of Platt some old brass. McLaughlin, who kept the books and acted as watchman for Baskin, testified that on Friday morning, May 5, Platt, Kaczor, Buckley and one Cervenski called at Baskin's place of business with a load of brass and he told them they would have to see the boss; that he then telephoned to Baskin about the material being there and was told that he did not want to purchase from men he did not know; that Platt, Kaczor and the others drove away in an ill-humor, cursing and swearing at Baskin. He also testified that none of these men came to Baskin's place of business on April 23. Quinn, the owner of the stolen property, swore that the brass was worth about $1300. When stolen it was largely in the form of new valves, and according to Platt and Kaczor the wheels on these were broken off with a sledge at the junk yard. A witness for Baskin testified that for melting and refining purposes material of the character in question was not worth at that time more than seven and one-half cents a pound. Four witnesses testified as to former good character of Baskin.

The chief contention of the plaintiff in error is that the evidence does not justify a conviction, there being no other testimony than that of Platt and Kaczor that the brass was ever in plaintiff in error's possession. It is admitted by counsel that a judgment of conviction for a crime may properly be based upon the uncorroborated evidence

of an accomplice, (*Rider* v. *People,* 110 Ill. 11; *Gray* v. *People,* 26 id. 344; *Loehr* v. *People,* 132 id. 504;) but it is contended that such evidence, under all authorities, is subject to grave suspicion and should be acted upon with the utmost caution. (*Hoyt* v. *People,* 140 Ill. 588; *Campbell* v. *People,* 159 id. 9.) It is further contended that the testimony of these two accomplices should be given less weight because they contradicted themselves as to the number of times Kaczor made trips to Quinn's place of business and as to the division of the proceeds of the burglary. The testimony of the two witnesses for the State is in direct conflict with the testimony of plaintiff in error and his employee, McLaughlin. There is no possible way of reconciling this conflict. The jury, in reaching their conclusion, must have accepted the testimony of the witnesses for the State and discredited or rejected the testimony for the defense. Whether or not Platt and Kaczor were or were not worthy of belief was the pivotal fact upon which the whole case turned and one which it was the peculiar province of the jury to determine. In this connection it is insisted that the jury must have acted arbitrarily in acquitting McLaughlin and convicting plaintiff in error on practically the same testimony. There is nothing in the record, even if the testimony of Platt and Kaczor be relied on, to indicate that McLaughlin received this property for his own gain. Moreover, the testimony does not show that he overheard Platt's statement as to where the goods were obtained. We do not think there is anything so inconsistent in these two different findings, or that the proof of plaintiff in error's guilt is so lacking, as to indicate that the jury were moved by passion or prejudice or acted unreasonably in finding plaintiff in error guilty.

It is insisted that the court erred in admitting the testimony of Kaczor that he had seen plaintiff in error in "John Johnson's case." The court struck out this testimony when it was found that it related to events occurring

after April 23, 1911. From a reading of the record we do
not think the State's attorney intentionally drew out this in-
competent testimony. The witness Platt testified that plain-
tiff in error told him, before the commission of the alleged
offense, that he would buy anything Platt might bring over
to him. Platt testified, over the objection of plaintiff in
error, that he had sold material to plaintiff in error on
another occasion than April 23, 1911, but was unable to
state whether this was before or after that date. The court
thereupon struck out that testimony. For the purpose of
proving guilty knowledge, evidence of other transactions
before the transaction in question is admissible. (*Lipsey* v.
*People,* 227 Ill. 364; *Cohn* v. *People,* 197 id. 482.) We
do not think reversible error was committed in the rulings
on this evidence.

The assistant State's attorney who was prosecuting this
case announced during the trial that there was an eye-
witness to the sale to plaintiff in error but that the State
did not feel that it should call him, and that he would like
to have the court call the witness and allow both sides to
cross-examine him. It is urged that this was error. We
think it is clear from the record that at the time this wit-
ness was called by the court the State's attorney did not
believe that he could vouch for the testimony of the wit-
ness or guarantee its truth. The holding of the court on
this question was within the rule laid down in *Carle* v.
*People,* 200 Ill. 494. This court said in *People* v. *Clemin-
son,* 250 Ill. 135, and *People* v. *Bernstein,* 250 id. 63, that
while it is not ordinarily good practice for the trial judge
in a criminal case to examine witnesses, it may under some
circumstances be his duty to do so. On the showing made
in this record we do not think the court committed error
in the examination of this witness.

It is further insisted that the court erred in refusing
the second, fifth and seventh instructions offered for the
plaintiff in error. These refused instructions were not ac-
254—33

curately worded, and if given they might have misled the jury as to the law of the case. Moreover, the questions touched upon by each of them were fairly covered by other instructions given for plaintiff in error.

We find no reversible error in the record, and the judgment of the criminal court of Cook county will therefore be affirmed.

*Judgment affirmed.*