## LITSINGER v. UNITED STATES.
### No. 4261.

Circuit Court of Appeals, Seventh Circuit.

Oct. 18, 1930.

Everett Jennings, of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty.; of Chicago, Ill., and Cassius Poust, Asst. U. S. Atty., of Sycamore, Ill.

Before EVANS, SPARKS, and PAGE, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from a judgment of conviction upon an indictment against the appellants and five other persons. All but the appellants had either pleaded guilty or had been convicted.

The first count charges that the defendants who are named in the indictment unlawfully assaulted the postal clerk Peters, who was then and there in the possession of the United States mails upon this mail car, and unlawfully and feloniously robbed him of certain mail in the count described. In other words, it is charged that Peters, as the cus-

todian of the United States mail, was robbed, and the count contains the additional averment that the robbery was made and committed with weapons, and that Peters' life was put in jeopardy by means of weapons, a dynamite bomb, machine guns, rifles, and shotguns.

The second count is substantially a charge of the same offense in slightly different language, descriptive of a charge of robbery committed by the use of weapons which were used in such a way as to put the life of Peters in danger.

The third count is a charge of a robbery of the same railway mail car by the same defendants at the same time and of the same mail, and is substantially the same charge as the first and second, except that there is eliminated therefrom the averment that guns and weapons were used.

The fourth count charges substantially the same offense as count No. 3.

Count 5 charges that the defendants stole and abstracted this certain mail from the United States mails.

The sixth count charges that they unlawfully had in their possession stolen mail, knowing that it had been stolen.

The seventh count charges that the defendants entered into a conspiracy to commit a robbery of the United States mails and to commit the offense alleged in the indictment in the prior counts.

The errors assigned and relied upon for a reversal of the judgment are:

First. There is no evidence to sustain the judgment against Litsinger.

Second. The court erred in calling Donovan as a court's witness after he had testified as a witness for the government; and in calling witnesses O'Brien and Meccia without any showing therefor by the government.

Third. The court erred in granting the government's motion to call the witnesses Meccia and O'Brien as court's witnesses, and in permitting the government to contradict and impeach them and the witness Donovan by testimony alleged to have been given by each of them at a trial of other defendants in this indictment and other alleged conversations with postal inspectors and others in contradiction of their testimony on this trial.

Fourth. As the offenses charged in the indictment are not dependent upon a particular disposition or motive, the court erred in allowing the government to examine its witnesses on offenses other than those charged in the indictment.

Fifth. The court erred in admitting in evidence Government's Exhibits 26 and 27, alleged photographs of Litsinger.

The witnesses Donovan, O'Brien, and Meccia were also defendants in the instant indictment and, long before the trial of appellants, had pleaded guilty, and at the time their testimony was given in this cause they were serving their sentences.

The testimony of these three witnesses supports fully and unquestionably the allegations of each count of the indictment. Neither of the appellants denies this. The same witnesses, however, emphatically denied that the Virgil Litsinger and John Flannery who participated with them in the robbery were the same Virgil Litsinger and John Flannery who were then being tried. If this were the only evidence introduced, a very serious question of identity would be presented; but other evidence was introduced which fully warranted the jury in finding that appellants were the same persons who participated in the robbery. The evidence shows that Litsinger, who participated in the crime, at times went by the name of Bill Collins, and that he had roomed and boarded for some time with Cleaver, another of the participants; that all the parties named in the indictment as defendants spent the entire night immediately preceding the robbery at Cleaver's home; that Mrs. Cleaver prepared breakfast for all the participants at 2 o'clock in the morning, and that at 4 o'clock a. m. they left the Cleaver home for the scene of the crime, which occurred about two hours after they arrived at the St. Marie railway station.

Mrs. Cleaver testified that she had known Bill Collins for about a year, during which time he had stayed at their house—two or three weeks at a time—part of each month; that she had lately learned his name is Virgil Litsinger; and that the Virgil Litsinger who was then and there being tried was the same Bill Collins who had stayed at her house, and who ate breakfast at her house with the other participants in the crime on the morning of the robbery. Witness Lamm also testified that he knew Bill Collins and had seen him occasionally at Cleaver's home, and that he was the same person as the Virgil Litsinger who was then and there being tried.

If under these circumstances there can be any question as to the identity of appellant Litsinger, it was a question for the jury, and we cannot disturb its finding.

As to the identity of appellant Flannery, there was evidence introduced that immediately previous to his arrest he had been a fugitive from justice for many months. He was arrested very early in the morning in an attic at the home of his sister. The outside doors of the house were locked, admission to the arresting officers was denied, and they were compelled to force open the outside door in order to make the arrest. Flannery thereupon told the officers that they had him, that he would take what the government gave him, but that they could not hang him for it. The evidence further shows that he told the government inspectors he had not been in the plan or arrangement to commit the robbery until a day or two before it occurred; that he got $15,780 and had spent it all; and that he had been staying in Canada.

Appellants offered no evidence. The question of identity was the only disputed fact, and it was properly submitted to the jury, and the jury very properly decided it. We have no right to disturb it.

■ The second and third assignments of error relied upon attack the action of the court in calling and examining the witnesses Meccia, O'Brien, and Donovan, and in permitting the government to impeach them by their previous inconsistent statements. This action of the trial court was entirely justified by the following decisions, cited by appellants: Carle v. People, 200 Ill. 494, 66 N. E. 32, 93 Am. St. Rep. 208; People v. Baskin, 254 Ill. 509, 98 N. E. 957; People v. Cardinelli, 297 Ill. 116, 130 N. E. 355; Jones' Commentaries on Evidence, vol. 5, page 4461.

The rule which permits the trial court to call and examine a witness at the request of the government's attorney is quite a reasonable one and is well recognized. If judiciously exercised it is productive of no harm; and many times, by extending to attorneys the right to cross-examine and to impeach on material matters, it prevents a failure of justice. The instant case is an illustration of the very beneficial effect of its proper use. The evidence of the three witnesses called and examined by the court proved the government's case in every detail except the identity of appellants. This the witnesses denied, and they further stated they were not acquainted with appellants. If there was ever a time when witnesses needed to be vigorously cross-examined with a very wide latitude,

it was then. This opportunity was afforded the government only by virtue of the rule which gave the court the right to call and examine them. Had the government called and used them as its own witnesses, it would have been precluded from cross-examining and impeaching them except in case of surprise; but the government apparently was in no position to claim a surprise, for the evidence shows that the witnesses, previous to testifying, stated to the government's officers that they would not identify appellants unless pardons were granted the witnesses. The trial judge properly instructed the jury regarding the effect of this testimony, and limited its probative value strictly to impeachment.

■ The court committed no error in the examination of these witnesses, nor in permitting the government to withdraw its own witness Donovan after a short preliminary examination and having him called as the court's witness. Nor was there error committed in the extent of cross-examination and in the impeachment by proof of inconsistent statements. All cross-examination of these witnesses and the inconsistent statements proved related directly to the question of identity of these appellants, which was a very material matter and therefore subject to cross-examination and impeachment.

■ The fact that some of the cross-examination and impeachment evidence incidentally and indirectly involved offenses other than those mentioned in the indictment furnishes no ground for complaint on the part of appellants under the fourth assignment of error relied upon. Such evidence was material and impeaching in its effect on the question of identity of appellants, and hence competent. The court very properly and carefully instructed the jury as to the reason such evidence was permitted, and how it should be considered; and thus appellants' interests in this particular were amply protected.

■ The admission in evidence of Litsinger's photographs was entirely proper by way of impeachment of witness Donovan on the matter of identification of Litsinger. There was evidence to the effect that both Donovan and Litsinger admitted the genuineness of the photographs, and this fact alone would render their admission in evidence competent.

We find no error in the record, and the judgment is affirmed.