People of the State of Illinois, Defendant in Error, v. James William Bell, Plaintiff in Error.

Gen. No. 10,622.

Fourth District.

July 20, 1965.

Daniel D. Glasser, of Chicago, for plaintiff in error.

Raymond L. Terrell, State's Attorney of Sangamon County, of Springfield (Richard A. Hollis, Assistant State's Attorney, of counsel), for defendant in error.

CRAVEN, J.

The defendant, James William Bell, was convicted by a jury on a four-count indictment charging illegal possession of narcotic drugs. The defendant was sentenced to life imprisonment as a previous offender under the provisions of sec 192.28–38 of ch 38, Ill Rev Stats, 1959. The defendant brought a writ of error to this court to review certain alleged errors in the course of his trial.

The defendant alleges the following errors:

1. That the prosecution's chief witness, Mrs. Diane Twitchell, was not properly called as the court's witness and that the defendant was denied the privilege of recalling her as the court's witness during the presentation of his defense.
2. The introduction in evidence of an authenticated copy of a prior conviction of the defendant.
3. The failure to strike evidence of the defendant's bad reputation as testified to by a federal narcotics agent.

4. Failure to prove the identity of the defendant in this proceeding with the person named in the record of the prior conviction.

Mrs. Diane Twitchell was an eyewitness to the alleged offense. She was a former addict who was paid $15 a day by the State to obtain evidence against the defendant. She was given in excess of $1,000 to make purchases of narcotics from the defendant, some of which she used herself. When called to testify by the State as the court's witness, she claimed she was no longer addicted.

■ The practice of calling a person as a court's witness at the request of the prosecution has long been recognized in Illinois. Carle v. People, 200 Ill 494, 66 NE 32. This practice was recognized where the person to be called was an eyewitness and the State's Attorney could not vouch for the credibility of the witness. Since the Carle case was decided in 1902, the Supreme Court of our State has restricted use of this practice to cases where there is a showing that manifest injustice would result if such witness does not testify. People v. Johnson, 333 Ill 469, 165 NE 235.

In this case, the State's Attorney stated that:

"At this time I'd like to state to the court for the record that there is a witness by the name of Mrs. Diane Twitchell and Mrs. Twitchell has been an addict of narcotics, and I do not feel that I can vouch for her credibility and I therefore ask the court to call her as Court's witness."

The defense then objected to the calling of Mrs. Twitchell as the court's witness. The court ruled:

"I will sustain the motion of the State's Attorney to make Diane Twitchell the Court's witness. Motion is allowed over the objection of the defendant."

On the face of this record, there was no showing except for the above assertion that manifest injustice would result if Mrs. Twitchell were not called. The State now asserts that failure to call Diane Twitchell as the court's witness would have constituted a "miscarriage of justice." It is further contended that the refusal to allow the recall of Mrs. Twitchell by the defense as the court's witness is not an abuse of the court's discretion.

Mrs. Twitchell testified to the purchase of heroin from the defendant on several different occasions and turning over the purchased narcotic to State narcotic inspectors. It was shown by her testimony that she was induced to use drugs by the defendant and by one Terry Suggs who was at one time the roommate of the witness. Terry Suggs and the witness, Mrs. Twitchell, became acquainted at a time when both were incarcerated in Michigan. On cross-examination of Mrs. Twitchell the reason for the Michigan imprisonment was not established.

After Mrs. Twitchell, called as the court's witness, was examined by the State and the defense she was excused, but the defense attempted to reserve the right of recall. No ruling was made on the request at the time. Later, when the defense attempted to recall Mrs. Twitchell as the court's witness, the request was refused.

Upon the refusal to recall Mrs. Twitchell as the court's witness, the defense indicated she would be called as a defense witness. At this point the State's Attorney informed the court that the witness was physically unable to testify and that she was under the care of a physician. The trial judge then interviewed Mrs. Twitchell and reached the conclusion that she was physically unable to testify. Thereafter the State's Attorney explained to the jury that Mrs.

Twitchell was physically unable to appear after being called by the defense.

The fact that Mrs. Twitchell was later physically unable to testify as a witness for the defense in no way affects the court's previous denial of the right to recall her as the court's witness in the presentation of the defense. Even if she had been called as a defense witness, if the defendant were not accorded the same latitude in examining her as was accorded the State's Attorney in the presentation of the case for the prosecution, the error would not be cured.

Subsequently the defendant took the stand and denied the sale of narcotics to the witness.

To evaluate this problem in light of the present law, it is important to note that Mrs. Twitchell was not only an eyewitness to the offense charged but also a paid informer for the State with a previous criminal record. The State based its investigation and prosecution on the reliability of the information provided by Mrs. Twitchell. She was indebted to the State for the money paid her, and further the defendant testified that Mrs. Twitchell told him she was threatened with arrest by State narcotics agents if she failed to cooperate. She was an admitted addict prior to the trial, and at the time of the trial she was under the care of a physician who testified that she was physically unable to reappear either as a witness for the court or for the defense.

 The testimony of an informer under such circumstances should be viewed with considerable circumspection. Our Supreme Court, in People v. Hermens, 5 Ill2d 277, at 285, 125 NE2d 500, recently discussed this problem in relation to the testimony of an accomplice under similar circumstances.

> "At common law the uncorroborated testimony of an alleged accomplice was sufficient to warrant a conviction if it satisfied the jury beyond a reason-

able doubt. This rule has always been followed and has frequently been pronounced in Illinois. (People v. Dabbs, 370 Ill 378; People v. Cohen, 376 Ill 382; and see numerous citations 22 CJS, page 1389.) It is, however, universally recognized that such testimony has inherent weaknesses, being testimony of a confessed criminal and fraught with dangers of motives such as malice toward the accused, fear, threats, promises or hopes of leniency, or benefits from the prosecution, which must always be taken into consideration. Some jurisdictions attach such weight to these weaknesses that the rule has been abrogated by statute (22 CJS 1391) while those jurisdictions which follow the rule, recognizing the questionable character of such testimony, attempt to restrict the weight to be given to it by statements that it is not regarded with favor, is discredited by the law, should be weighed with care, is subject to grave suspicion, should be viewed with distrust, and that it should be scrutinized carefully and acted upon with caution. (People v. Gleitsmann, 361 Ill 165; People v. De Rose, 359 Ill 512; People v. Kendall, 357 Ill 448; People v. La Coco, 406 Ill 303.) Other similar statements by this court are too numerous to be cited. This court has also said that where it appears that the witness has hopes of reward from the prosecution, his testimony should not be accepted unless it carries with it absolute conviction of its truth. People v. Grove, 284 Ill 429."

The calling of a court's witness is not wholly discretionary, but is rather limited by a requirement that there be a showing of manifest injustice in the refusal to call such a witness. People v. Bennett, 413 Ill 601, 604–605, 110 NE2d 175.

██ Clearly, the State is not obliged to call Mrs. Twitchell as a witness if it believes her testimony to

231

be unreliable. Carle v. People, 200 Ill 494, 66 NE 32. However, it is inconsistent to allow a paid informer upon whom the State has predicated its entire arrest and prosecutive process, to testify as a court's witness as part of the State's case in chief and later deny the same privilege to the accused in the presentation of his defense. That which is a miscarriage of justice if denied to the State is not a matter of mere discretion when denied to the accused.

■ Where there is a showing of manifest injustice without a person's testifying as a court's witness, in fairness, there must be a reciprocal privilege to which an accused is entitled in the presentation of his defense. Our Supreme Court recognized this right by implication in People v. Banks, 7 Ill2d 119, 129 NE2d 759, where the court stated (p 129):

> "There was ample cause for the State's Attorney to doubt her veracity and integrity. Yet without her testimony there was a definite likelihood of miscarriage of justice. Further the record shows that defendant's counsel fully cross-examined the witness on all matters brought out on examination by the State's Attorney. In addition, while Mrs. Williams was so testifying on cross-examination by defendant, he introduced as his exhibit a green uniform claimed by Mrs. Williams as the dress she had on at the time of the homicide. Further, plaintiff in error after objecting to Mrs. Williams being called by the State as the court's witness, called her as a witness for defendant. After several preliminary questions, an exchange took place between opposing counsel on the status of the witness. At the request of counsel for defendant, Mrs. Williams was designated as the court's witness and again cross-examined by both defense and prosecution. Under the circumstances

■■■

of this case we believe Josephine Williams was properly made the court's witness."

■ The State contends that this error was waived because no offer of proof was made. The issue here is not whether the evidence sought on behalf of the defendant was admissible but whether the defendant is entitled to have Mrs. Twitchell recalled as the court's witness. If after recall of Mrs. Twitchell certain objectionable evidence was sought to be elicited, an objection could be made; and it would then be incumbent upon the defense to preserve the evidentiary question with an offer of proof. The refusal to recall this witness at the request of the defendant is not an evidentiary question. It is a question of the equal application of the practice and use of a court's witness in a criminal proceeding.

■■ Since the practice of calling a court's witness is so narrowly defined with respect to the right of the prosecution to call such witness in the first instance, the greatest latitude should be allowed the defense to attack the credibility of one whose testimony is admittedly so unreliable. Once the evidentiary door is opened in the name of justice for the prosecution it cannot, as a matter of discretion, be closed to the defendant.

The defendant raises as error the failure of a rebuttal witness for the State to divulge the source of his information upon which he based his testimony as to the defendant's reputation.

■ The witness Renato Costarella, an agent for the United States Bureau of Narcotics, testified that the defendant's reputation for truth and veracity in the community where he resided was bad and that he would not believe the defendant under oath. It is proper procedure in Illinois to attack the credibility of a defendant who has taken the witness stand in his own

233

behalf. People v. Melnick, 274 Ill 616, 113 NE 971; People v. Lehner, 326 Ill 216, 157 NE 211.

On cross-examination, the witness was asked the persons in the defendant's community upon whom he relied to come to that conclusion. He was unable to remember anyone except one person with whom he had talked concerning the defendant. He refused to divulge this person's name and asserted the informer's privilege. Thereupon the defense moved to strike all of the witness' testimony. The motion was denied.

 Illinois has recognized the privilege against disclosure of the identity of an informer. People v. Mack, 12 Ill2d 151, 145 NE2d 609. The policy underlying this rule of law is to encourage citizens to communicate information concerning the commission of crimes to law enforcement officials without fear of reprisal. Roviaro v. United States, 353 US 53 (1957); Cleary, Illinois Evidence, sec 10.29 (2d ed 1963). Since the effect of this privilege is to supress evidence, it should only be recognized if the policy supporting the privilege would be harmed by denying its protection. People ex rel. Noren v. Dempsey, 10 Ill 2d 288, 139 NE2d 780.

The majority opinions in Roviaro and by the Illinois Supreme Court in People v. Durr, 28 Ill2d 308 (1963), 192 NE2d 379, recognized the limitations of the informer privilege. On the facts of the Roviaro case it was concluded that the privilege "must yield to the fundamental requirements of a fair trial." Durr was distinguished factually from Roviaro. Even so, three members of the court dissented and strongly suggested that the fact of nondisclosure of the informer frustrated judicial inquiry into "reasonable grounds" for an arrest based solely on information supplied by an informer.

 Clearly, the basis for informer privilege is more compelling in the "reasonable grounds" cases than

here. Although there is not uniformity in result, it seems clear that the judicial tendency is to restrict the shielding of informers and not to expand the privilege of nondisclosure. In this case, we are asked to expand the privilege far beyond the "reasonable grounds" line of cases and to do so when the facts of the case show an absence of the reason underlying the existence of the privilege.

 The State saw fit to introduce evidence of bad reputation in order to discredit the defendant's testimony. Evidence of bad reputation is not evidence of the commission of a crime. Reputation is by definition public rather than private and refers to the general opinion of a person's character held by the community in which he resides. Black, Law Dictionary (4th ed West Pub Co 1951).

Since reputation involves opinion and is general or public in nature, it is neither private nor confidential. Thus there was no confidential communication regarding the commission of a crime to support the claimed privilege.

 No doubt the information that the witness learned in the course of his business of investigating narcotics traffic led him to the conclusion that the defendant was untrustworthy and could not be believed under oath. This is personal opinion and a subjective conclusion, and is not equivalent to knowledge of general reputation in the community. If this witness had such knowledge, it is not apparent on the face of this record. The testimony was without foundation and should have been stricken.

The State has contended that each of the errors asserted by the defendant in this appeal was waived by failure to specify such errors in the written motion for new trial. The error with respect to admission of agent Costarella's testimony as to reputation was evi-

235

dentiary in nature and preserved in paragraph 9 of the defendant's post-trial motion.

A defendant's substantive rights are not to be precluded by the failure of counsel, without aid of a transcript, to recite from memory each particular evidentiary question properly preserved during the course of trial. If such evidentiary errors are properly preserved during the trial by offer of proof or by timely and appropriate objection they are not waived if the post-trial motion sets up error of the trial court in the admission of evidence over the defendant's objection.

The objection as to the use of Mrs. Twitchell as the court's witness on behalf of the State and denying recall to the defense goes to the very heart of the proceeding. If it is an abuse of discretion and constitutes a miscarriage of justice it is plain error. It is not waived by failure to set it forth specifically in the post-trial motion. Ch 38, sec 121–9, Ill Rev Stats, 1963.

The State relies heavily upon People v. Fleming, 54 Ill App2d 457, 203 NE2d 716, in arguing the defendant waived all errors by not preserving them in his post-trial motion. The Fourth Division of the First District Appellate Court stated in Fleming, supra, note 1, at 460–1 and 717–18:

"After a jury trial, all nonjurisdictional allegations of error which are not properly objected to during the trial *or not asserted in the written motion for a new trial* are deemed to have been waived and need not be considered by the reviewing court. People v. Greer, 30 Ill2d 415, 197 NE2d 22 (1964); People v. Gratton, 28 Ill2d 450, 454, 192 NE2d 903." (Emphasis added.) "There are exceptions to the general rule, but they lie within the discretion of the reviewing court and are not mandatory. As the Code of Criminal Procedure provides, 'Plain errors or de-

236

fects affecting substantial rights *may* be noticed although they were not brought to the attention of the trial court.' (Emphasis supplied.) Ill Rev Stats (1963) ch 38, . . . [sec] 121–9(a). Without setting out in full the conditions upon which a reviewing court will exercise its discretion and consider errors not brought to the attention of the trial court, we may say that the key factors are the closeness of the case, the conduct of the trial judge, the extent to which questionable evidence may have contributed to the guilty verdict, the fairness of the trial in general, and the magnitude of the errors alleged. See People v. Bradley, 30 Ill2d 597, 198 NE2d 809 (1964); People v. Sprinkle, 27 Ill2d 398, 189 NE2d 295 (1963); People v. Bybee, 9 Ill2d 214, 222, 137 NE2d 251 (1956); People v. Moore, 9 Ill2d 224, 231, 232, 137 NE2d 246 (1956); People v. Nowak, 372 Ill 381, 24 NE2d 50 (1939)."

There is no question that this alleged error was preserved by timely objection during the trial. The State contends it was not set forth in the defendant's motion for a new trial.

 Our Supreme Court has consistently held that in cases where the evidence is closely balanced it is proper to consider errors not properly preserved. People v. Bradley, 30 Ill2d 597, 198 NE2d 809; People v. Nowak, 372 Ill 381, 24 NE2d 50.

 In this case, the State felt that evidence so closely balanced that failure to allow Mrs. Twitchell to testify as the court's witness would result in a miscarriage of justice. Evidently it was felt that Mrs. Twitchell's testimony was the very essence of the prosecution's case; however, to further substantiate her testimony, which was directly contradicted by the defendant, the prosecution chose to attack the credibility of the defendant with evidence of his reputation.

This, together with the State's shielding of Mrs. Twitchell from further examination during presen-

tation of the defense of the accused, constitutes plain error directly affecting the substantial rights of the defendant. We need not hold there was insufficient evidence to support this conviction absent Mrs. Twitchell's testimony.

It is not necessary for a decision of this case that the additional errors assigned be considered in the opinion. The questions raised are not likely to be present again in a retrial of the case.

For the reasons stated, this case must be reversed and remanded for a new trial.

Reversed and remanded for a new trial.

SMITH, P. J. and TRAPP, J., concur.