(No. 12115.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. CHARLES HEDGE, Plaintiff in Error.

*Opinion filed October 21, 1918.*

1. CRIMINAL LAW—*rule as to one who advises commission of a larceny.* Under the Criminal Code one who advises and encourages the commission of a larceny, though not present when the goods were actually taken, is guilty of larceny equally with the actual thief, and he may be indicted in the same language and convicted as a principal.

2. SAME—*when evidence is admissible in larceny case though it shows other offenses.* In a larceny case, where the evidence shows the automobile was stolen in accordance with a conspiracy between the accused and the witness, by which the latter was to steal automobiles and bring them to the accused, who would return them for the reward, evidence as to other automobiles being taken and returned in carrying out such conspiracy is admissible.

3. SAME—*acts and conversations of one conspirator are admissible against the others.* Where the evidence shows the fact of a conspiracy, the acts and conversations of one or more of the conspirators in furtherance of the conspiracy are admissible against the other conspirators though they were not present.

4. SAME—*what evidence concerning another offense is not admissible.* Where the evidence in a larceny case tends to show that the automobile was stolen in pursuance of a conspiracy between the accused and a certain other person to steal automobiles and return them for a reward, evidence tending to raise a suspicion that the accused was connected with the taking of another automobile not shown to have been in any way connected with the conspiracy is not admissible.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding.

THOMAS E. SWANSON, and CHARLES C. WILLIAMS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and EDWARD A. PRINDIVILLE, of counsel,) for the People.

284 — 33

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles Hedge was convicted of larceny on an indictment charging him with larceny and receiving stolen goods, and has sued out a writ of error to reverse the judgment on the grounds that it is not sustained by the evidence and that the court erred in the admission of evidence and in instructing the jury.

The plaintiff in error was for several years an adjuster or investigator for insurance companies and specialized in the recovery of stolen automobiles. On November 17, 1916, a Haynes automobile belonging to Samuel H. Regensberg was stolen in the city of Chicago by Norman Dietz and Edward Thacker, and on November 23 it was returned to Regensberg by Hedge, who received from the insurance company $100 for its recovery. Hedge testified that the first information he had about the car being stolen was from the thief, Norman Dietz, who asked Hedge if he was looking for a Haynes car. Hedge questioned Dietz and learned that the car came from a person on Grand boulevard. The police had been notified of the theft of the car, and upon investigation Hedge learned the owner's name and entered into negotiations with him for the recovery of the car. When these were completed Hedge arranged with Dietz to locate the car and meet him the next day. Hedge went to the appointed place the next day. The car was standing on the corner. He drove it down-town, delivered it to Regensberg, received the $100 and gave $75 to Dietz. He testified that Dietz never told him that he had stolen the car and he did not know that Dietz had anything to do with stealing it; that Dietz was a "stool pigeon," who gave him information and used to come to his office wanting to know what was missing and would look over Hedge's files and descriptions of cars; that Hedge had all the stool pigeons he could get but Dietz was the only one he would actually see, and that nobody ever told him that Dietz was an automobile

thief; that he first saw Dietz in December, 1915, and talked with him about a stolen car in regard to which Hedge had been employed by an adjustment company, and that afterward he got information from Dietz in several cases which helped in the recovery of stolen cars, for which he paid Dietz.

Dietz was a young man about twenty years old when Hedge became acquainted with him, who then was or soon became an automobile thief. In the first few months of their acquaintance he gave Hedge information in regard to stolen automobiles which helped Hedge in several cases to recover the automobiles, and Hedge paid him for the information. He testified that in May, 1916, Hedge told him that if Dietz could get cars Hedge could put them away and they could get the rewards for them, and the next day took him in his automobile to Hillside, to the road house of Frank Russo, and introduced him to Russo as a friend of Hedge; that soon after Dietz made an arrangement with James Sloan, another young automobile thief about seventeen years old, to assist in stealing and concealing automobiles, and in pursuance of that arrangement several automobiles were stolen, taken to Russo's and left there, and Hedge afterward paid Dietz for them different sums of money. Sloan testified to the arrangement with Dietz and to the stealing of cars and taking them to Russo's and the payment of money to him by Dietz. He also testified that he went to Hedge's office with Dietz, and Hedge told him to go ahead and get the machines and bring them out to Russo's place. Russo denied that Hedge ever made any arrangement to store automobiles in his garage. Dietz testified that Hedge did not know about the cars Dietz was going to steal; that Dietz told nobody but simply went out and got the cars; that Hedge told Dietz the first time they met that Dietz must never come to Hedge with anything he personally had anything to do with,—never to steal a car and then come to Hedge and try to get some of the reward.

If the understanding between Hedge and Dietz was that Dietz should steal cars and bring them to Russo's place and that Hedge should return the cars to the owners and collect the rewards for their recovery then Hedge was guilty of larceny as well as Dietz. The Criminal Code provides that whoever, not being present aiding, abetting or assisting, has advised, encouraged, aided or abetted the perpetration of a crime shall be considered as principal and may be indicted and punished as such. One who has advised and encouraged the commission of a larceny, though absent when the goods were actually taken, is as much a thief as the person who carried them away and may be indicted in the same language and convicted as principal. The case for the prosecution depends upon the testimony of Dietz and Sloan. Aside from their testimony all the circumstances shown against Hedge, however suspicious, may be interpreted consistently with his innocence. These young men were old thieves steeped in crime, with several indictments against each of them, having at various times been in jail for months. It was the province of the jury, however, to determine what weight should be given their testimony, and upon a consideration of all the evidence we could not say that there is clearly a reasonable doubt of the defendant's guilt had the record been free from material error.

The charge was the larceny of Regensberg's automobile. It is insisted that the testimony in regard to the theft of other automobiles, their delivery at Russo's garage and the payment of a part of the reward to Dietz was incompetent, because evidence of other distinct and unconnected offenses is not admissible on a trial for larceny. If the testimony of Dietz and Sloan was true there was a conspiracy for the stealing of automobiles and restoring them to the owners for reward, and where a conspiracy is established, any act done in the prosecution of the enterprise and in furtherance of the common design is admissible in evidence. The defendant was not indicted for conspiracy and it was not

charged in the indictment that a conspiracy existed, but it was competent to show, for the purpose of establishing the defendant's connection with the crime as an accessory, that the crime was the result of a conspiracy and the steps by which the crime was brought about, including every act of each of the conspirators in furtherance of the common purpose. (*Spies* v. *People,* 122 Ill. 1.) The various crimes testified to were thefts committed in carrying out the alleged scheme agreed upon by the conspirators.

Objection is made to the giving of an instruction defining an accessory and stating that he may be indicted and convicted as principal; an instruction referring to the testimony of an accomplice; and an instruction that if two or more persons are engaged in the prosecution of a felony, all are responsible for the acts of each in the prosecution of the felony. The objection to each is that it is not applicable to the evidence as to the larceny of the Regensberg automobile. It is answered by what has been said on the subject of conspiracy.

Evidence was admitted, over the defendant's objection, of a conversation between Dietz and Sloan, in which Dietz and Sloan arranged to steal cars and conceal them for the purpose of collecting the rewards offered for their return. Hedge was not present and it is insisted that the evidence was not admissible against him. This conversation was competent as one of the acts of Dietz in furtherance of the purpose of the conspiracy by inducing Sloan to join him in prosecuting the enterprise. Where a conspiracy exists to accomplish an unlawful purpose, anything said or done by any of the conspirators in the accomplishment of the unlawful purpose is the act of all and is admissible in evidence against all. (*Raymond* v. *People,* 226 Ill. 433; *Lasher* v. *Littell,* 202 id. 551.) The particular means of accomplishing the purpose may not be agreed upon or the particular victim of the proposed crime may not be known or the particular person to commit the crime or the time or place may

not have been selected, but all the acts and words of the
conspirators who have agreed upon the general purpose in
determining these matters and in further carrying out the
purpose may be proved. (*Spies* v. *People, supra.*) When
Dietz and Sloan made their arrangement then Sloan became
one of the conspirators, whose acts from that time in the
prosecution of the common purpose were the acts of all.

The court admitted, over the objection of defendant,
the testimony of a witness in regard to a Ford car which
Hedge's son had sold ten months before the trial; that on
the day before he was examined the witness went with the
purchaser, who had had the car during these ten months,
and found that he could not make out the motor number.
This was improper. The Ford car had no connection with
the case, so far as the evidence discloses. From the fact
that the court admitted the evidence over the defendant's
objection the jury might very well infer that it had a tend-
ency to show that the defendant was not only dealing in
Dietz's stolen cars, but also in other cars as irregularly ob-
tained. This evidence was intended to reflect discredit upon
defendant from a source entirely independent of the crime
for which he was on trial and should not have been admitted.

Frank Russo was a witness for defendant and testified
that he lived near Dietz's brother, and when Dietz was in-
dicted for larceny, after having a conversation with Dietz's
brother, Russo got his mother-in-law to go on Dietz's bond,
for which he was paid four or five dollars at a time. The
State's attorney was permitted to cross-examine him, over
objection, in regard to his signing other bonds, evidently
for the purpose of having it inferred that he was a profes-
sional bondsman. The cross-examination of witnesses on
collateral matters is so much in the discretion of the court
that we do not regard this cross-examination as erroneous,
though it was irrelevant.

The character of the evidence was such that justice re-
quires that the case should be submitted to the jury without

substantial error. The testimony erroneously admitted may have turned against the defendant the scale of the jury's judgment when without it the criminal record of the witnesses against him would have turned the scale in his favor.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*