(No. 15530.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MAX WAGMAN, Plaintiff in Error.

*Opinion filed February 19, 1924.*

1. CRIMINAL LAW—*weight of testimony of an accomplice is a question for jury.* Whether the testimony of an accomplice should be believed is a question for the jury, and the jury may believe the testimony of accomplices rather than the defendant's, especially where their testimony is strengthened by circumstantial evidence.

2. SAME—*testimony of accomplice should be received with caution.* A conviction may be sustained on the uncorroborated testimony of an accomplice, but such testimony is of doubtful integrity and is to be received with great caution.

3. SAME—*promise of leniency does not render testimony of accomplices incompetent.* The fact that accomplices were promised lighter punishment if they would testify does not, alone, necessarily require that their testimony should not be considered.

4. SAME—*when evidence of different robberies is admissible to prove crime of receiving stolen property.* In a prosecution for receiving stolen property, where the proof for the People is that self-confessed criminals and the defendant entered into a conspiracy by which the criminals were to commit robberies and the defendant was to buy the booty from them, evidence of different robberies, the result of the conspiracy, is admissible.

5. SAME—*what evidence is admissible to prove guilty knowledge of receipt of stolen property.* In a prosecution for receiving stolen property, in order to show guilty knowledge it is proper to show that the defendant had on other occasions received stolen property from the same thieves.

6. SAME—*when motion to require People to elect may be denied.* In a prosecution on counts charging several defendants with robbery and with receiving stolen property, the court, in its discretion, may deny a motion to require the People to elect on which count they will prosecute, where the counts are based on same occurrence.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding.

JAMES J. BARBOUR, and OTIS F. GLENN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, Max Wagman, (hereafter called defendant,) was indicted in the criminal court of Cook county jointly with Edward Kosnick, Jack Kral, Stanley Machowiec and Edward Mazurka. The first count charged the accused with robbery of Edward Alberti of a large amount of money and jewelry and that at the time they were armed with a pistol. The second count charges the same persons with receiving stolen property. Defendant was tried alone, and the jury returned a verdict of guilty of receiving stolen property and finding the value of the property received to be $12,816.06 and defendant's age to be forty-four years. Motions for a new trial and in arrest were overruled and judgment and sentence pronounced on the verdict.

Defendant urges as grounds for reversal of the judgment that the court erred in admitting evidence of other robberies than the one charged in the indictment; that the court erred in not requiring the People to elect on which count they would prosecute; that the evidence was not sufficient to warrant the verdict; that the court gave improper instructions for the People; and the State's attorney was guilty of improper conduct.

April 15, 1922, defendant purchased the leasehold and furniture of the Monroe Apartments, at the corner of Mon-

roe and Paulina streets, in Chicago. The building contains
six flats, of seven rooms each. Defendant and his wife
lived in part of the building and rented part of it to others.
There was a common reception room, which was for the
use of the occupants of the building, and a telephone line
and signal board operated from the reception room. Dif-
ferent people or families occupied parts of the building at
different times. Prior to his purchase of the Monroe Apart-
ments defendant and his wife operated the Curtis Gardens,
at 1100 West Madison street, which had previously been
run as a saloon, restaurant and cabaret. They lived over
the Gardens and had a bartender named Long, with whom
Edward Kosnick and Jack Kral were acquainted. They
met defendant in September, 1921. Some time afterwards
Kosnick worked for defendant and stayed generally at his
place but testified he was not paid for his work, which ap-
pears to have been intermittent. Kral also went to live at
defendant's in April, 1922. Edward Alberti was the pro-
prietor of a jewelry store located at 1246 Milwaukee ave-
nue, in Chicago, on May 10, 1922. At about 9:30 o'clock
A. M. the people in the store were made by robbers to lie
on the floor and the store was robbed of $1000 in money
and a large amount of jewelry. Kosnick, Kral, Macho-
wiec and Mazurka, besides being identified as the robbers,
admitted that they committed the robbery. They testi-
fied on behalf of the People that Kral was serving an in-
determinate term in the penitentiary at Joliet on another
charge, and there were several indictments against him and
Kosnick, Machowiec and Mazurka for burglary and rob-
bery. The assistant State's attorney who tried this case
testified he told them if they would become witnesses for
the People and tell the truth he would permit them to plead
guilty to grand larceny and take a sentence from one to
ten years, instead of from ten years to life if they were
tried and convicted of robbery with a gun. They agreed
to do so, and testified they committed the Alberti robbery

and sold the property to defendant for $1000. They also testified to robbing a man named Heard, in November, 1921, of $3000 worth of property, a man named Gorecki, in February, 1922, of $4500 worth of property, and a man named Nerad, in April, 1922, of $6000 worth of property, all or most of which they sold to defendant for a small fraction of its value. Kosnick testified defendant told them, when he was operating the Curtis Gardens, that he would buy any property they could procure by theft or robbery, and all four of them testified that defendant advised and encouraged them to rob and bring the plunder to him for sale, and sometimes he furnished them a gun or guns to aid in the robbery. He furnished them with one or two guns at the time they robbed the Alberti store, and they testified he knew they were going to commit the robbery. Shortly prior to the robbery of the Alberti store Kosnick or Kral (probably Kosnick) had taken a watch of defendant's to Alberti's store for repair. When they entered the store on the morning of the robbery Kosnick called for the watch, for which he had a ticket, and it was given him. As he took the money out of his pocket to pay for it he produced a gun and commanded, "Hands up!" Kral testified the purpose of taking the watch to the jewelry store for repair was to enable them to look the place over for the purpose of robbery. When they went to commit the robbery Kosnick was to get the watch before they robbed the place. They committed the robbery in a few minutes, the details of which they gave in full, as well as did Alberti and his employees, but it is not necessary here to state them. They went from the store, after the robbery, direct to defendant and three of them went into his house. The chauffeur drove the car away to get rid of it. They asked defendant to give them $1500 for the jewelry but finally sold it to him for $1000. They testified, or some of them did, they told defendant before committing the robbery that they were going out to stick up a jewelry store. They divided

the money received from him in four equal parts. They testified the defendant had knowledge of the robbery of the other places they testified to robbing, and promised them to buy, and did buy, the proceeds of the robbery. Guns were found in defendant's place when he was arrested, and the explanation he gave for their possession was that he wanted them for protection. The watch which had been taken to Alberti's jewelry store for repair was found on his person when he was arrested. He denied any knowledge of any of the robbers having taken it to the store or having taken it from his place. It had not been running before it was taken to the jewelry store for repair but was running when taken from defendant's person. A card was found on defendant's person which was in the handwriting of Kosnick and contained a notation of various amounts due from the four robbers to defendant. Defendant denied the card was found on his person, but the officers testified they took it from him, and Kosnick testified it was in his handwriting and was given defendant as a memorandum of the amount due from the robbers to Wagman.

We have not undertaken to set out the evidence of the four robbers further than that they testified defendant knew of and advised all the robberies and agreed to buy the proceeds of them, and that he did buy them for a fraction of their actual value. These four witnesses admitted that they were criminals, and the testimony shows they were of a very bad type of criminals. They testified they were armed with guns when they committed the robberies, and substantially that their intention was to kill and murder if they deemed it necessary to do so in order to make their escape. Defendant's counsel insist they were unworthy of belief and that no man should be deprived of his liberty on the testimony of such criminal scamps, and especially so when their testimony, by an arrangement of the State's attorney, enabled them to escape a possible conviction and sentence of from ten years to life and get instead a sentence of from

one to ten years. All these matters were fully before the jury. They saw the witnesses, heard them testify, and chose to believe their story rather than the story of defendant. Also there were a few circumstances, such as their acquaintance with defendant, some of them living at his house, the taking of defendant's watch to Alberti's store for repairs and it being found on his person when he was arrested, and the card in Kosnick's handwriting of amounts due from all four of the robbers to defendant, which tend to cast suspicion on the truth of the denials made by defendant and in some measure to strengthen the testimony of his confessed accomplices.

A conviction may be sustained on the uncorroborated testimony of an accomplice, but such testimony is of doubtful integrity and is to be considered with great caution. (*Cohn* v. *People*, 197 Ill. 482.) Whether the testimony of an accomplice should be believed is a question for the jury. (*People* v. *Baskin*, 254 Ill. 509.) But it is insisted the four robbers were offered lighter sentences for their crimes if they would testify. One of them was already serving a sentence in the penitentiary at Joliet for another crime and one of them was a reformatory convict. Nothing can be said in behalf of the character of the four robbers. They were desperate criminals, but they knew whether the matters testified to by them were true or not, and although they were granted lighter punishment if they would testify, that fact, alone, does not necessarily require that their testimony should not be considered. *People* v. *Becker*, 215 N. Y. 126, 109 N. E. 127, is an instructive case on the subject. That was a capital case and defendant received a death sentence. The court said: "Of course, these accomplices were very bad men. Accomplices in murders always are. But it is almost a truism in criminal law that if the testimony of bad men were absolutely rejected many murderers would escape the punishment which they deserve."

The court, by an instruction given for defendant, told the jury that the testimony of accomplices is subject to suspicion and should be acted upon with great caution, and that the jury should consider the influence under which their testimony was given. Notwithstanding these things, the jury believed they truthfully testified that defendant received the property stolen from the Alberti store. There is no doubt Kosnick, Kral, Mazurka and Machowiec robbed that store. Besides their own admissions, three of them were identified by Alberti and some of his employees. It is not disputed that they committed the other robberies they testified to. All of them testified they sold the proceeds of the robberies, including those of the Alberti robbery, to defendant. He denied it. The jury believed the four confessed criminals told the truth and the trial court approved the verdict. The fact that none of the stolen property was found in defendant's possession when he was arrested two months after the robbery is not a circumstance of great importance. We do not feel that we would be warranted in reversing the judgment on the ground that the evidence did not support it. We have not overlooked the fact that some occupants of rooms in defendant's building testified that they had never seen anything wrong in the place, and that some witnesses gave testimony to the effect that defendant's reputation was good or that they had never heard it discussed.

It is very earnestly contended that the court erred seriously in admitting proof of other crimes than the Alberti robbery. The proof on behalf of the People was that the four self-confessed criminals and defendant had entered into a conspiracy and agreement by which the four men referred to were to commit robberies and defendant was to buy the booty from them. Under that situation we have held evidence of other crimes, the result of the conspiracy, is admissible. (*People v. Halpin,* 276 Ill. 363; *People* v. *Hedge,* 284 id. 513; *People* v. *Baskin, supra,* and cases there cited.)

In order to show guilty knowledge it was proper to show defendant had on other occasions received stolen property from the same thieves. *People* v. *Niles,* 300 Ill. 458; *People* v. *Kohn,* 290 id. 410.

It is also contended the court committed reversible error in denying defendant's motion to require the State to elect on which count they would prosecute. This contention can not be sustained. *People* v. *Thompson,* 274 Ill. 214, and cases there cited; *People* v. *Munday,* 280 id. 32.

We do not think there is any basis for the charge of defendant that he was a victim of persecution by the police officers. All the proof made of defendant's criminal record and trouble with the police was the testimony of defendant himself on direct examination, and does not, in our judgment, warrant the charge that he was a victim of persecution.

Complaint is made of some instructions given for the People, but the criticism is very technical and does not warrant extending this opinion by a discussion of them, further than to say the jury were fully and fairly instructed.

Finally, it is contended the State's attorney made improper remarks in arguments to the jury. The remarks complained of were, in our judgment, not of a character to prejudice the jury. To some of them the court sustained objections. The court gave the jury a number of cautionary instructions, such as that they should not allow prejudice to influence them; that their verdict should be based on the evidence heard on the trial, and that it would be a great injustice and would vitiate their verdict if they were influenced by anything the court instructed them not to act upon, no matter from what source it came.

We are impressed by the record that defendant had a fair trial and that we would not be warranted in reversing the judgment. It is accordingly affirmed.

<em>Judgment affirmed.</em>