THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH CICHON, Plaintiff in Error.

*Opinion filed February 18, 1926.*

CRIMINAL LAW—*jury must determine credibility of witnesses.* While the jury are not authorized to disregard the testimony of any witness from mere caprice, it is for them to determine which of the witnesses they will believe, and the Supreme Court will not reverse a judgment of conviction on the facts, where the evidence conflicts, unless it leaves a reasonable doubt of defendant's guilt.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

HAROLD P. O'CONNELL, and JAMES R. CONSIDINE, (CLYDE C. FISHER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Joseph Cichon, plaintiff in error, (hereafter called defendant,) and Anthony Schultz, were indicted by the grand jury of Cook county for attempting to break and enter the Northwestern Trust and Savings Bank, in said county, with intent to steal the goods, chattels and money of said bank. The indictment alleges they broke and smashed the bricks in the wall of the bank building to enable them to burglariously enter it but that they were intercepted and failed to accomplish their purpose. Defendant was tried alone and found guilty. The court overruled motions for a new trial and in arrest and sentenced him to the penitentiary. He has sued out this writ of error and asks a reversal on the

ground that the court erred in admitting improper testimony, in permitting the State's attorney to ask improper questions, and because the evidence did not justify the verdict and judgment.

The Northwestern Trust and Savings Bank is located at 1201-1203 Milwaukee avenue, near Division street. Milwaukee avenue runs northwest and southeast and is intersected by Dixon street, which runs north and south. The bank faces Milwaukee avenue. Next to the bank, on its westerly side, is a frame building twenty-five feet wide and thirty feet deep, which is divided into two stores, and next to that building is a frame restaurant, which was vacant. The restaurant building extended from the front back fifty-five feet and was in what is called an L-shape, so that the rear of the restaurant building is next to the wall of the bank building, which is of brick. The bank building extends back to the alley, so that about thirty feet of its westerly wall faces a yard in the rear of the restaurant building. Defendant and Schultz were discovered by the police officers in the restaurant building about one o'clock A. M., November 2, 1924, and were arrested and taken to the station.

Anthony Biescke, who has been a police officer nineteen years, testified that around one o'clock A. M., November 2, he and officers Payne, Pfankochi and Balata were at the location of the bank. They examined the bank building to see if everything was all right and heard a noise in the restaurant building. They looked in a window and saw a light and two men moving about. The witness kicked in the glass in the front door and he and officer Payne entered and found in the building defendant and Schultz. They were in the rear of the restaurant building. There was an opening broken in the wall of the frame building about two by three feet and the brick wall of the bank was chipped out about an inch and there were signs of brick and mortar. The police found there an iron bar seven-eighths of an inch in diameter, three and one-half feet long and weigh-

ing five pounds, with rounded ends. The iron bar was found lying at the hole made through the wall of the restaurant building. There was a space of about eight inches between the restaurant wall and the bank wall, the bricks of which were marred. About an inch and a half of the bricks were chipped out and loosened up. The witness testified Schultz, at the station and in the presence of defendant, said he met defendant about eight or nine o'clock that evening; that they had several drinks and then met some men whom he did not know. Defendant suggested they break in through the bank, and Schultz said that would be a good idea; that he knew the restaurant was vacant. He said they had a couple more drinks, then went to the rear of the restaurant, broke the window above the transom and got in, found a bar in the kitchen of the restaurant and started to work on the wall, when they were surprised by the police. The witness testified defendant said practically the same thing; that they broke in the rear, got over the transom and both took turns in using the bar on the wall, and after they made the hole in the wall of the frame building they worked on the wall of the brick building. On cross-examination the witness testified he smelled liquor on the men but they were perfectly sober; that they didn't appear to have been drinking. They offered no resistance when arrested.

Walter Payne, the police officer who was with Biescke when they found and arrested the men, testified there was a hole cut through the wall of the frame building about two by three feet and the brickwork on the west wall of the bank building had been marred about an inch or so. They found the iron bar lying close to the wall, and the witness asked Schultz what his idea was, and he said, "Just another crazy idea." After they were taken to the station they were questioned, and Schultz said, in the presence of defendant, that they had met at the corner of Milwaukee avenue and drank a lot. It was some hours later that the

320–8

idea entered their minds to break into the bank; that they proceeded to the rear of the restaurant building, broke a glass in the transom over the kitchen door leading to the restaurant, entered, found the iron bar, cut the hole through the frame building and started on the wall of the bank when the police appeared. Payne was asked on cross-examination if he could tell by their appearance whether either of them had been drinking, and testified they might have had a drink but he would not call it drinking.

Joseph S. Frankowski testified he was assistant cashier of the bank, which is incorporated under the laws of Illinois. He was familiar with the restaurant building. On November 2 he saw a hole that was broken through its wall. It had the appearance of having been made with some blunt instrument. Some of the bricks in the bank wall were marred.

The above is the substance of the material testimony for the People.

Defendant testified in his own behalf that he, his wife and Schultz attended a dance at Union Hall and left the dance about 11:30 o'clock. He and Schultz were hungry but defendant's wife was not. He and Schultz went to a restaurant, where they had some coffee, and Mrs. Cichon went home alone, without going to the restaurant. After they left the restaurant he and Schultz started home, about two blocks distant, and at the alley on Dixon street met some men who invited them into a room to drink, and they went. The men were standing in the yard on the alley back of the restaurant. After having their drinks they walked back of the vacant restaurant, and the back door being open they entered it. The police came about fifteen or twenty minutes later. There were seven or eight men there besides defendant and Schultz. There were about four bottles of whiskey or alcohol passed around. When the officers came in at the front of the building defendant sat still and did nothing. The other men walked out of the back door. He

saw the hole in the wall two weeks before the night of his arrest. There were plenty of iron pipes lying around the restaurant. He did not enter the building for the purpose of attempting to burglarize the bank. Neither he nor Schultz had any tools or implements when they went into the building. He denied that either he or Schultz told the officers that they went into the building for the purpose of breaking into the bank.

Schultz also testified in behalf of defendant and substantially corroborated his testimony. He denied having anything to do with breaking the hole in the wall of the building, and denied making any statement to the police officers that he had anything to do with making the hole or any intention of robbing the bank.

In rebuttal, officers Biescke and Payne testified that when they entered the building and arrested the men the back door of the restaurant was closed and had a bar across it, about the middle. Biescke testified that in order to let in two officers who were at the rear of the building he had to open the door. Neither he nor officer Payne saw anyone in the building except defendant and Schultz and saw nobody leave the building.

We have endeavored to set out the substance of the material parts of the testimony for the People and for defendant. It is very apparent from reading the testimony that if the People's witnesses told the truth the verdict and judgment were authorized. It is also apparent from the result of the trial that the jury did believe the witnesses who testified on behalf of the People and did not believe the testimony on behalf of defendant. We have so often held that this court will not reverse a judgment in a criminal case where the evidence is conflicting unless it leaves a reasonable doubt of the defendant's guilt that it is unnecessary to cite authorities. It was for the jury to determine which of the witnesses they would believe, and while they would not be authorized to disregard the testimony

of any witness from mere caprice, it does not appear that any such situation is presented by this record.

There is no merit whatever in the contention that defendant was so drunk as to be incapable of forming any criminal intent. The evidence of defendant himself does not tend to show any such state of intoxication, and the evidence of the People is that both defendant and Schultz were sober, although they smelled of whiskey or alcohol.

On cross-examination of defendant the State's attorney asked him if he had ever been arrested before, to which objection was made and sustained by the court. Defendant testified he was released on bond in January, 1925, and the State's attorney asked him where he had been from that time up to the time he testified. Defendant's counsel objected to the question as immaterial but the court permitted him to answer, and defendant testified he had been at home. We do not see how it can reasonably be claimed that defendant was prejudiced by the State's attorney asking a question which he should not have asked (whether defendant had ever been arrested before) but which the court did not permit the witness to answer; and no prejudice could possibly result from defendant testifying, in answer to a question, that he had been at home since giving bond.

There is no error shown to have been committed on the trial which would justify a reversal of the judgment, and the evidence was of such character that we cannot say the jury were not justified in finding the defendant guilty and the court not justified in rendering judgment and sentence on the verdict.

The judgment is affirmed.        *Judgment affirmed.*