(No. 23952.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM RUBEN *et al.* Plaintiffs in Error.

*Opinion filed February 18, 1937—Rehearing denied April 19, 1937.*

JAMES M. BURKE, and GEORGE M. CRANE, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, WILLIAM B. CRAWFORD, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Sam Ruben and Nathan Kodner, residents of Milwaukee, Wisconsin, were indicted in Cook county in December, 1935, for the larceny of a Chevrolet automobile belonging to Donald Burchman of Chicago. They were found guilty by a jury in the criminal court and have sued out this writ of error to reverse the judgment.

In July, 1934, Herman Claussen owned a Chevrolet de luxe coach, which was badly damaged in a collision. The damaged car was taken in on a trade allowance at $100 by the Irving Park Motors. This concern sold the car through the medium of John Jubert, who ran the garage where the car was stored, to Phil Lehman, for $80. This particular Chevrolet bore motor number 3178241. Burchman owned a Chevrolet two-door coach with an olive green body, bearing motor number 2969817, and equipped with an Atlas tire bearing number JV5E104741. His car was stolen September 14, 1934, in Chicago, and Burchman next saw it in Milwaukee in the garage of Ruben and Kodner. He positively identified it by the number on the tire and by certain distinguishing marks on the body. When recovered, the original motor of the Burchman car had been removed, and the motor from Claussen's wrecked Chevrolet had been substituted.

Phil Lehman conducted a garage in Niles. Ruben and Kodner were dealers in used cars in Milwaukee, and bought used cars from Lehman. The evidence specifically con-

cerned four used cars sold by Lehman to Ruben and Kodner and delivered by him to them in Milwaukee. The car stolen from Burchman was one of the four. Prior to this theft, Lehman testified that on one of his visits to Ruben and Kodner, the former asked him if he could procure some "hot" cars. He then professed his inability but shortly thereafter took Brady, a paroled convict, with him to Milwaukee and told Ruben and Kodner that Brady could get "hot" cars. Ruben instructed them, according to Lehman, to go out and purchase a wrecked car, obtain a title or bill of sale therefor, steal a like car, remove the motor and substitute the motor from the wrecked car. The motor from the "hot" car was to be destroyed and the chassis number of the wrecked car placed on the stolen car and the wrecked car destroyed. The result, according to Ruben, would be a legitimate car with a legitimate title. The thieving was to be confined to Fords and Chevrolets.

Lehman related he went to the Jubert garage, inspected Claussen's wrecked Chevrolet and purchased it for $80. He paid $20 down, and went to Milwaukee where he told Ruben and Kodner he had located a wrecked 1932 Chevrolet, de luxe model, and he did not have money enough to buy it himself. A few days later Kodner and one Drapela, an employee, came to Lehman's garage and expressed a desire to see the wrecked Chevrolet. Lehman drove them to Jubert's garage where Kodner inspected the car. He gave Lehman $75 with which to complete the purchase and told him to steal a car just like it, having the same color and to change the motor. After the wrecked Chevrolet was placed in his garage, Lehman and Brady salvaged the motor, transmission and rear axle; the rest was thrown into a gravel pit. Ruben again told the witness to hurry and steal a car which would match the wrecked one as he had a market for it. After Brady had failed repeatedly to steal such a car, an escaped convict from the Oklahoma penitentiary named Stulka appeared on the scene. He soon

brought in a stolen 1932 Chevrolet de luxe model with a green body for which he was paid $25. This was Burchman's car. The motor and transmission were taken from this car by Lehman and Brady, broken up and thrown into a gravel pit. The number was chiseled off the body. The motor from Claussen's wrecked Chevrolet was then placed in the stolen car and the body number from the wrecked car was placed on it. After this, the stolen car was driven to Milwaukee on September 17, 1934, and Ruben paid Lehman $205 for it, later turning it over to one Levin, his nephew. No bill of sale was given with the car and Ruben told the police he did not receive one.

John Carnell, a Milwaukee detective, testified he had taken a supply of report blanks to Ruben and Kodner on which they agreed to make daily reports by mail to the Milwaukee police of cars purchased by them. None of the reports listed any one of the four cars which the People established were stolen and had passed through the hands of Ruben and Kodner. The State of Wisconsin required reports be made by dealers in used cars to the Secretary of State every month. Cars stolen through the conspiracy of Ruben, Kodner, Lehman and Brady were not reported to that official as having passed through the hands of Ruben and Kodner. On the city blanks there was reported a Ford car with a motor number 3178248, with part of a serial number, 21BA06. The report said this car was purchased from Phil Lehman at Niles, Illinois. The witness could not find the car in the garage and told Ruben that Fords did not have serial numbers. He inspected the particular car this report covered and found the report of the handling of a Ford really covered the stolen Burchman Chevrolet then in the hands of Levin.

Brady, the paroled convict from an Illinois penitentiary, was sent back to prison for breaking his parole, but was produced in court as a witness for the People. His testimony was substantially like that of Lehman's. He testified

he first called Lehman concerning the wrecked Chevrolet belonging to the Irving Park Motors, which was stored in Jubert's garage and he was present when Lehman made the $20 deposit. He aided Lehman in making the changes on the two cars. He accompanied Lehman to Milwaukee when the stolen Burchman Chevrolet was delivered and engaged in conversation with Ruben and Kodner concerning the work done to prevent detection of the theft and alteration.

Lehman and Brady were jointly indicted with Ruben and Kodner. Brady was not prosecuted but was returned to prison as a parole violator. Lehman, for aiding the People in the case, was released on probation for one year on his own recognizance. By other testimony and the introduction of exhibits the People connected the events subsequent to the theft of the Burchman Chevrolet. In order to connect Ruben and Kodner with Lehman and Brady in a conspiracy to steal automobiles the People proved the theft of three others. These were stolen by Brady, delivered to Lehman for motor changes and alterations to disguise their identity, then delivered to Ruben and Kodner who paid Lehman for them. The three cars were afterwards sold to innocent purchasers.

Rubin and Kodner denied buying the Burchman car, or the other three cars, from Lehman with knowledge of their theft. They denied ever entering into any agreement or arrangement with Lehman concerning the purchase of stolen cars, or that they ever knowingly purchased any stolen cars from either Lehman or Brady at any time. They admitted knowing Lehman and Brady but denied that Lehman ever informed them Brady was an ex-convict who would steal cars. According to their testimony all cars purchased from Lehman and Brady were purchased in good faith and in the ordinary course of trade. Other witnesses testified that defendants each possessed a good reputation among friends and business associates in his community.

Many errors are assigned by the defendants. Several of them based upon remarks by the prosecuting attorneys during the examination of witnesses and in their arguments to the jury, must be ignored as no objections were made thereto during the course of the trial. Defendants were ably represented in the court below by counsel who evidently did not believe those particular remarks were objectionable. If he neglected to interpose objections when they should have been made, the objectionable language or conduct is not reviewable in this court. (*Graham* v. *People,* 115 Ill. 566; *Lipsey* v. *People,* 227 id. 364; *People* v. *Fitzgibbons,* 346 id. 338.) Where an objection was made and then withdrawn during the trial, nothing is preserved for review. *People* v. *Buoniconti,* 340 Ill. 299.

An error asserted is the failure of the trial court to allow the motion of defendants, made at the close of the evidence in chief for the People, for a directed verdict of not guilty. At this time two witnesses had sworn they had stolen cars at the request of defendants and that defendants paid them for the cars. In one instance they had sold them a car and had the date on a bill of sale changed at their request so as to make the transaction appear to have taken place at an earlier date. The Wisconsin law requires Illinois automobile titles, after a certain date, on all cars from Illinois sold in Wisconsin. The pre-dating of the bill of sale would get around the impossibility of furnishing title to a stolen car, as it would appear defendants had the car in question in their Milwaukee garage before this particular Wisconsin law took effect. The court below did not err in denying the motion.

If the crime charged was the result of a conspiracy, the acts and declarations of the conspirators are admissible in evidence the same as if the indictment charged the defendants with conspiracy. No error is committed in admitting evidence of other crimes, acts and declarations of the conspirators that were done or said during the life

of the conspiracy. (*People* v. *Hedge*, 284 Ill. 513; *People* v. *Rooney*, 355 id. 613.) That this is a proper rule the defendants admit, but they contend certain evidence was admitted over their objection, which the rule will not justify. One Frisby, a People's witness, told of taking the wrecked Chevrolet of Claussen's in on a trade for a new car. He recorded this transaction in a record which the police required him to keep and which was admitted in evidence. Defendants say they should not be bound or prejudiced by records or testimony of transactions to which they were not parties, because they had no right or title to the car evidenced in the record and testimony. They cite *People* v. *Alward*, 354 Ill. 357, and *People* v. *Weitzman*, 362 id. 11. Defendants misconstrue the import of this evidence. It was designed to establish the history of the wrecked car, for from it came the lawful motor which went into the stolen car bought by defendants. This evidence was not introduced essentially to establish the conspiracy, but to establish the chain of circumstances designed to camouflage the identity of the stolen car. The cases cited are not similar in facts and have no bearing upon the point made.

Objection was made to the testimony of a garage manager and mechanic named Gorman, wherein he said the wrecked Chevrolet was in such condition that $350 would have to be spent to rebuild it to its former condition. This was admissible to show Lehman bought the car, as he said he did, not for rebuilding but for the purpose of obtaining the motor to put in a stolen car. The description of the car given by Gorman established this as the car Kodner, Brady, Drapela and Lehman inspected.

It was wrong, the defendants say, to admit the testimony of Lehman wherein he related his conversation with Stulka concerning the stealing of automobiles, as this conversation did not take place in the presence and hearing of defendants. The evidence was competent to show Lehman was carrying out the common intent arrived at between him

and defendants. The testimony of the People established defendants as the originators of the conspiracy. Oddly enough no objection was made by defendants to the testimony of Lehman securing the services of Brady as a thief, although he entered the conspiracy in the same manner as Stulka.

No error was committed in admitting into evidence the certified statute of Wisconsin, requiring monthly reports to be made by all used car dealers to the Secretary of State, even though no showing was made of subsequent sections which might contain exceptions or exemptions. No objections were made at the trial and in any event the burden was on defendants to establish exceptions or exemptions under the statute if they existed, for the statute required them to make these reports to the Secretary of State.

The defendants say their daily reports of cars received and sold, made over a course of months to the city of Milwaukee, were inadmissible because no city ordinance of Milwaukee required the making of such reports by dealers in used cars. No ordinance was introduced in evidence but all parties agreed a certain ordinance existed concerning certain property bought and pawned. The police authorities supplied defendants with blanks with instructions to inform them daily of all cars bought and sold, with certain other information respecting such transactions. From their actions and instructions to an employee, defendants must have believed the ordinance embraced the business they were engaged in, for the daily reports were made. Defendants made these reports and they were admissible in evidence against them in order to show their falsity. These reports unquestionably influenced the jury very strongly as the four stolen cars particularly referred to in the evidence of the People, including the Burchman Chevrolet, were not mentioned in the reports, either to the State or the city.

It is next contended certain exhibits were admitted on behalf of the People without sufficient foundation. The

record discloses that defendants were the ones to introduce the particular exhibits in evidence and had a witness testify on cross-examination concerning them. No objection can be made because the People then used these exhibits to support its theory of the case, as they were competent and pertinent.

Because Lehman and Brady sold to defendants a large number of automobiles, the titles to which were never in question, they now argue the admission in evidence of proof of valid sales was wrong and not within the scope of the conspiracy. The sales of stolen cars did not take place at one time, but were interspersed between honest sales of cars over the several months the alleged conspiracy was functioning.. *People* v. *Hedge, supra,* does not support defendants, as the instance considered in that case occurred after the conspiracy had ended. The defendants admitted buying many cars from Lehman and Brady; Ruben said between sixty and seventy-five; Kodner said they bought about sixty cars from him in 1934. If there was error in this matter, defendants were equally guilty of introducing the incompetent evidence and cannot complain.

Defendants contend the evidence preponderates greatly in their favor, therefore the verdict was contrary to the manifest weight of the evidence. Aside from the testimony of the character witnesses for defendants, the jury was confronted with two arrays of witnesses whose stories were emphatically opposed on the two main factual issues of the case,—*i. e.,* (1) Did the defendants conspire with Lehman and Brady to commit larceny of automobiles? and (2) Was the Burchman Chevrolet stolen in furtherance of that conspiracy? The testimony of defendants and some others for them agrees substantially with the testimony of Lehman and Brady in many details. The defendants could not satisfactorily explain why they had failed to render reports on the four stolen cars to the Wisconsin authorities and to the police authorities of Milwaukee. Furthermore,

desperate efforts were made by defendants, or those acting for them, to regain possession of the Burchman stolen Chevrolet from the Milwaukee police after defendants knew, (if they had not known beforehand,) the car was stolen. At the time they tried to replevin it they knew the car was stolen, and they knew the law did not give them the right to it. Clearly the effort to regain possession was to enable them to destroy highly incriminating evidence. This is all the more apparent because Kodner testified the suit was not instituted until Federal authorities had interested themselves in the interstate travel of the stolen car. It is true Lehman and Brady were laboring under a heavy load of moral turpitude; they were accomplices. That fact alone does not render their testimony wholly unworthy of belief. The jury may believe such persons where their testimony is strengthened and amplified by circumstantial evidence. (*People* v. *Wagman,* 311 Ill. 330.) The stories of Lehman and Brady received plenty of corroboration. The Burchman Chevrolet was sold to Levin. This transfer to Levin was reported to the Milwaukee police as the transfer of a Ford. What aided in tripping defendants on this transaction was their carelessness in giving the fictitious Ford a serial number.

Where the evidence is highly conflicting, as here, it is the duty of the jury to determine which of the witnesses it will believe; this determination will not be disturbed unless the evidence clearly discloses a reasonable doubt of defendants' guilt. (*People* v. *Cichon,* 320 Ill. 111.) We have repeatedly said we will not disturb a verdict, or reverse a judgment of conviction except where the verdict is clearly against the weight of the evidence, or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the guilt of defendant. (*People* v. *Thompson,* 321 Ill. 594.) After subjecting the evidence and the resulting verdict in this case to this test we cannot see any reason for reversing the judgment. This case took

about two weeks to try and the record here is voluminous. In such a case it is virtually impossible to prevent the commission of some errors, no matter how learned and fair the trial judge and counsel may be. We are satisfied the errors committed in this case were of minor variety and did not militate against a fair and impartial trial to defendants and a resultant verdict free from all reasonable doubt.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*