(No. 24054.—

The People of the State of Illinois, Defendant in Error, *vs.* Sam Ruben *et al.* Plaintiffs in Error.

*Opinion filed June 11, 1937.*

Grenville Beardsley, for plaintiffs in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, William B. Crawford, John T. Gallagher, Melvin S. Rembe, and Blair L. Varnes, of counsel,) for the People.

Mr. Justice Jones delivered the opinion of the court:

Sam Ruben and Nathan Kodner were convicted of stealing an automobile from Charles F. Ledyard and sentenced to the penitentiary. The trial was by a jury in the crim-

inal court of Cook county. This writ of error has been sued out.

The defendants were residents of Milwaukee, Wisconsin, and were partners, as dealers in second hand automobiles under the firm name of Blue Mound Auto Bankers. Philip Paul Lehman conducted a garage, and bought and sold used cars in Niles, Illinois, which is on a direct route between Milwaukee and Chicago. Roy Brady is a former convict. He and Lehman were jointly indicted with Ruben and Kodner. They became witnesses for the People and have not been tried under the indictment. The conviction in this case rests on the testimony of Lehman and Brady, with the support of certain corroborative evidence.

Lehman testified that in 1934, Ruben and Kodner stopped at his brother's filling station in Niles, with some used cars, and a conversation arose among them. Ruben asked Lehman if there were any used cars around, for sale. Lehman had a sedan and a truck, which he showed the defendants, and a price was finally agreed upon, with the understanding that Lehman would deliver the cars in Milwaukee. When Lehman took them to Milwaukee, Ruben asked if he could get more used cars, and Lehman replied he would try. In five or six days thereafter Lehman delivered some more cars and was asked if he could obtain others. Upon a later date of delivery by Lehman, he had a conversation with Ruben and Kodner during which Ruben said, "Phil can you get any hot cars in Chicago?" Lehman replied, "I could not myself. I may get in touch with some friends of mine that could." The defendants told Lehman they desired Fords and Chevrolets, because there is a good sale for such cars and they can be gotten rid of fast, and the motor numbers can be more easily changed than in other makes of cars. Lehman returned to Niles and got into communication with Brady and Willard Stulka, another ex-convict, and arranged to have them steal cars of the kind desired by the defendants to whom Lehman reported

the arrangement. At the time he made this report in Milwaukee, he stated that Ruben directed him to "Go out and buy a wrecked automobile or a motor that you can get legitimate title on, a notarized bill of sale to, and then steal a car to match that title or bill of sale or whatever you buy with the motor; take the motor out of the hot car, smash it up with sledge hammers or something and throw it away. Then put the motor from the wreck or the motor that you buy into this hot car. If it happens to be a Ford you raise the body and chisel the numbers off of the chassis and put the body back down. * * * Then he said you have a legitimate title to this hot automobile, * * * and it looks like a legitimate car."

Proof was made of sales by Lehman to the defendants of a number of cars between the early part of 1934, and the time of the arrest of the defendants, in November, 1934. The exact number is not shown but is placed between forty and sixty. Some of the cars had been stolen while others were legitimate deals. The People's proof in reference to the Ledyard car, which is the one mentioned in the indictment, is that it was a 1928 Ford Tudor sedan, the engine number of which was A499430. Ledyard, the owner, parked it near the corner of Cicero avenue and School street, in Chicago, on August 26, 1934. He was gone about two hours, and when he returned the car had disappeared. After the defendants had been arrested, and a number of their cars had been sequestered by the police, Ledyard was taken to Milwaukee in January, 1935, and identified his car by windshield cracks, body dents and upholstery tears. However, the motor and the tires had been changed. He inspected the automobile on the premises of Charles W. Northam and Carl Taylor, who were dealers in used cars under the name of "State Auto Sales." The number of the engine which was in the car at that time was AA596094. Northam testified that he purchased the car from Ruben. The letters "AA" indicate that the

motor is for a Ford truck. The title paper which accompanied this motor showed, upon its face, that the engine had been installed in a truck, and when this fact was mentioned, the word "truck" was erased and the word "coach" was inserted in its place. When Northam asked if that would be all right, Ruben assured him it would. Brady testified he bought the truck motor from the Central Auto Wreckers, in Chicago, and received the Illinois certificate of title and delivered the motor and certificate at Lehman's garage. While the truck motor and chassis were there, he saw Ruben and Kodner. Lehman asked them if it was all right to take the truck motor out of the chassis and put it in the Ledyard car. They said it was all right and the truck motor was thereafter installed. The original motor was broken up with a sledge hammer and dumped into a gravel pit. The car numbers were chopped off. Brady testified that he had stolen the Ledyard car. When this car was re-fashioned, he drove it to Milwaukee and delivered it to Ruben and Kodner and told them it was the car that had the "AA" motor in it.

The People also made proof of the theft of other cars by Brady and Stulka, the changing of motors, and the sale and delivery by Lehman to the defendants. One was the Burcham car, the facts concerning which are set forth in the opinion of this court in *People* v. *Ruben*, 366 Ill. 29. Other stolen cars belonged to Mable A. Murphy, Martin Jankovich, Walter S. Kukla, Daniel J. Gleissner and John F. Wiek. The record in this case contains 1247 pages and we will not encumber this opinion with a detailed recital of the facts concerning these cars because it is not denied that they were stolen through the agencies of Lehman, the motors changed and chassis numbers obliterated, after which they were sold to defendants. Further mention of these cars will be made only as the evidence concerning them tends to corroborate the testimony of the witnesses Lehman and Brady.

The defendants denied knowledge of the theft of the cars. They asserted they bought them in good faith believing the transactions to be *bona fide*. They testified they never had any conversation with either Lehman or Brady in which they expressed a willingness or desire to purchase stolen cars. They claimed that they were engaged in a legitimate business and produced proof of their previous good reputation for honesty and integrity.

In this State an accomplice is a competent witness, but his testimony should be acted upon with great care and caution and the jury may disregard it altogether provided they believe it is untrue. Yet, if the jury believe it is true, then they should give it weight and credit accordingly. The jury is to determine the weight and credit to be given to the testimony of an accomplice in the light of the admonition of the court as to its tainted character. (*People v. Ruben, supra; People v. Wagman,* 311 Ill. 330.) A judgment of conviction procured on the testimony of an accomplice will not be molested where the facts and circumstances testified to by such accomplice, when weighed and tested according to the established rules applicable thereto, are sufficient to prove guilt beyond a reasonable doubt. *People v. Karatz,* 365 Ill. 255; *People v. Kendall,* 357 id. 448.

The testimony of the accomplices is supported by considerable corroborative evidence. John Carnell, who was a police officer assigned to the stolen-auto detail of Milwaukee, testified, among other things, as to the Burcham car. He said he went to the defendant's place of business and talked with Sam Ruben and asked him where the Ford coach was. Ruben replied that he did not know where it was as he had sold it in the northern part of Wisconsin. Later, in Milwaukee, the witness saw a car bearing the motor number he was looking for—3178241—in the possession of M. J. Levin, a nephew of one of the defendants. After a brief conversation they went to a nearby filling

station and were driven over a grease pit in order to get under the car to check the secret motor number and found it to be 3362297, which corresponded to the number on the Burcham stolen car.

The defendants used a bill of sale for the Mable Murphy car which stated that they purchased it on May 15, 1934, whereas the established fact is, that the car was not stolen until October 25, 1934, and did not come into the possession of the defendant until the next day. It was shown that a justice of the peace and a notary public, in Chicago, had supplied Lehman with these ante-dated bills of sale, which he turned over to the defendants. They reported to the police that the Jacovitz car had been purchased from Mike Adams, whereas it was purchased from and delivered by Lehman. The Wiek car was owned by a naval officer whose home was in Long Beach, California. While passing through Illinois his car was stolen. It was transfigured and sold by Lehman to the defendants. When they disposed of it, they used a bill of sale bearing a date when the car was not even in Illinois.

The defendants say that they bought the automobiles at a fair price and that this circumstance tends to refute guilty knowledge. Such a fact, if shown, is a circumstance which the jury may take into consideration, together with all the other facts and circumstances proven on the trial. However, the evidence in this regard is quite conflicting and there is testimony tending to show that some of the receipts had been altered to show a larger purchase price than was actually paid. They also say that the cars were openly delivered to the defendant's place of business during business hours in the presence of customers and employees. They further urge that they put the cars on display in a sales window of a prominent thoroughfare in Milwaukee; that they paid for the cars, in some instances, by check, and that these circumstances negative guilty knowledge. A number of decisions of this court are cited in support

of their contentions. There is no doubt that such facts, if they exist, may be shown, and that, as a general rule, they do tend to negative guilt, but it is only in cases where the stolen property has not been altered and changed in appearance that such rule can obtain. In this case, the very purpose of changing motors, effacing numbers and transfiguring the cars was to deceive the real owners of the property, the police and the public. It would be a shocking rule that would permit a culprit who had thoroughly disguised his booty, to escape on the mere ground that it was delivered to him during business hours and openly exhibited for sale.

Complaint is made that the assistant State's attorney made prejudicial remarks in the presence of the jury. This court has frequently admonished attorneys as to proper trial decorum. Oftentimes it seems that our admonition is of little avail. In this case, the matters complained of are admittedly trifling, when standing alone, but defendants claim that taken together, they worked a prejudice and deprived defendants of a fair trial. We do not agree with this contention, but we must reiterate that, in this day and age, attorneys should have a high regard for their official duties and not permit the heat of conflict to cause them to transgress the well established codes of ethics. In the case at bar, the attorneys on both sides should have been more mindful of their professional duties.

The complaint that the trial judge, in ruling upon objections, used language which was tantamount to commenting upon the weight of the evidence is not at all well taken.

Certain instructions are complained of, including instruction number eight, which set out the provisions of the Illinois statute requiring a certificate of title to automobiles. It is said that, in view of the fact that sales could be made in Wisconsin without any certificate of title, the Illinois statute was inapplicable, and, therefore, it was

erroneous to instruct the jury concerning it. The defense tried the case upon the theory that each sale was accompanied by a valid bill of sale or a valid certificate of title issued under the laws of Illinois. Under the circumstances, no possible harm could have resulted from the giving of the instruction. We see no vice in any of the instructions complained of, or in the court's rulings upon the admissibility of evidence.

Under all the facts and circumstances in the case, we are of the opinion the jury was warranted in reaching the conclusion that the defendants, Lehman, Brady, and others, formed a conspiracy for the purpose of stealing and dealing in used cars; that they consummated their purpose and that the Ledyard car was stolen in pursuance of such conspiracy.

The record is free from substantial error and the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*